On April 1, 1976, Cotton States Mutual Insurance Company (Cotton States) renewed, for a one-year term, a comprehensive general liability policy of insurance to Norrell Heating Air Conditioning, Inc. (Norrell), being Policy No. GLA-14643.
On November 5, 1976, a suit was filed by Barney L. Crowe and Ella Mae Crowe (hereinafter referred to as plaintiffs) against Norrell. The complaint alleges that on November 14, 1975, the plaintiffs entered into an oral contract with Norrell for certain repairs to an air conditioning/heating system located in a building owned by the plaintiffs, situated in the City of Hueytown, Jefferson County, Alabama. It was represented to the plaintiffs by Norrell that the air conditioning units needed servicing, that the coils to said air conditioning units needed cleaning, and that the plaintiffs relied on said representation and authorized Norrell to perform the said services. Thereafter, Norrell represented in writing to the plaintiffs that the coils had been cleaned and a charge was made by Norrell for said service; and it is further claimed in said count that representations of Norrell *Page 272 
that the air conditioning coils had been cleaned were untrue and that said representations were made by Norrell intentionally to deceive the plaintiffs, or they were made recklessly without knowledge of the truthfulness thereof, or were made innocently and they were relied on by the plaintiffs. As a result thereof, compensatory and punitive damages are claimed.
Count B of the complaint alleges that on or about June 24, 1971, based upon representations made by Norrell to the plaintiffs, that a compressor for one of the air conditioning units at the same location in the City of Hueytown was defective, and the compressor was replaced with a new one. The compressor carried a five-year warranty against defects. On or about July 6, 1972, Norrell inspected the air conditioning/heating system at the plaintiffs' said premises in Hueytown, Alabama, and determined that the compressors in both air conditioning units should be replaced; however, the compressor which was replaced in 1971 was still within the warranty period and it would be replaced without cost to the plaintiffs; and that the compressor in the second air conditioning unit would be replaced with a new one and would carry a five-year warranty. The plaintiffs authorized these replacements and Norrell performed the work and submitted an invoice to plaintiffs which was paid.
It is further alleged that on July 7, 1976, tenants in the plaintiffs' building, above referred to, notified Norrell that the air conditioning system for the premises was not functioning properly. It is alleged that Norrell failed to advise the plaintiffs of the complaint made by the tenants and further failed to inspect, service or repair the air conditioning units; and that, thereafter, on July 8, 1976, the plaintiffs learned of this problem and, upon contacting Norrell, they were advised that the compressor for each of said units should be replaced. The plaintiffs authorized the replacement of the compressors, again one of them being under the warranty and the other not. It is further claimed in this count of the complaint that representations of Norrell that the warranty had expired on one of the units was untrue; and that the misrepresentations by Norrell to the plaintiffs were made intentionally to deceive the plaintiffs or were made wantonly without knowledge of the truth or were made innocently; and the plaintiffs relied on said representations for which compensatory and punitive damages are claimed.
After being served with a copy of the summons and complaint in the Crowe case, Norrell forwarded it to Cotton States requesting that it (Norrell) be provided with a defense. By certified letter dated November 24, 1976, Cotton States returned the summons and complaint to Norrell advising that the causes of action as set out in the Crowe complaint did not fall within the coverages provided by the policy of insurance.
On July 27, 1977, Norrell filed an action for declaratory judgment against Cotton States asking the court to determine the coverage question.
The only evidence offered at the hearing was the testimony of Peter Franck, who testified that he was Vice President and General Manager of Norrell Heating Air Conditioning, Inc. His duties consisted of supervising the service department, overseeing the office procedures as to sales and supervision of certain phases of bookkeeping. Mr. Franck testified that Norrell did business with Barney Crowe beginning in 1971. He explained that Mr. Crowe owned a building in Hueytown, Alabama, which he leased to the Post Office Department and that, from time to time, his company did service and repair work to the heating and air conditioning system in this building. There was no maintenance contract between Mr. Crowe and Norrell; however, when Mr. Crowe had problems with the heating and air conditioning system in this building, he would contact Norrell and, in many instances, would request that they provide him with an estimate before the work was done.
Mr. Franck testified that he had received a complaint from Mr. Crowe after his company had checked the air conditioning units *Page 273 
at his building in Hueytown and found that both compressors had failed. In checking the records of his company, Mr. Franck stated that they found that one of the compressors was under the original manufacturer's five-year protection, but the other was not. He negotiated a price with Mr. Crowe for the replacement of one compressor, including the purchase of a new one, and the price for the replacement of the compressor was still under the manufacturer's warranty. Subsequently, Mr. Crowe and his wife filed suit against Norrell.
This witness also testified that the compressors involved in the suit brought by Mr. and Mrs. Crowe were originally installed by Norrell in 1965. The brand name of the compressors was "Tecumseh." He explained that the compressors in question are not carried in stock by Norrell; however, when they receive an order for one, it is purchased from a wholesaler and Norrell is billed by the wholesaler. It is installed by Norrell's personnel and the customer is then submitted a bill for the price of the compressor and the labor involved in installing it. The warranty to the Crowes was by the manufacturer of the compressors and not from Norrell.
The trial court found that Cotton States was required, under the terms of the "products hazard" provisions of the policy, to defend the action filed by the Crowes against Norrell and to pay on its behalf all sums which Norrell becomes legally obligated to pay as damages. Cotton States appealed.
The only issue presented is whether the trial court correctly found that Cotton States had a duty to defend its insured in the Crowe action or whether it has an obligation to pay any amount recovered by the plaintiffs in that suit.
The policy involved is a comprehensive general liability policy which defines one of the coverages as follows:
 "`products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."
The comprehensive general liability portion of the policy provides as follows:
 "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
 "C. bodily injury or "D. property damage
 "to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."
The following are among the exclusions:
"This insurance does not apply:
 "(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the insured will be done in a workmanlike manner;
". . .
 "(n) to property damage to the named insured's products arising out of such products or any part of such products;
 "(o) to property damage to work performed by or on behalf of the named insured arising out of the *Page 274 
work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
". . ."
The lawsuit filed by the Crowes against Norrell seeks damages for alleged misrepresentations made by Norrell in servicing and cleaning the coils on one air conditioning unit, for misrepresentations allegedly made concerning the warranty on an air compressor which Norrell had previously installed and for installing a compressor in the other unit which had also been installed by Norrell.
Cotton States says these claims clearly fall within exclusions (n) and (o) set out above. Norrell says they clearly fall within the products hazard definition and within the specific exception set out in exclusion (a).
Cotton States argues that property damages to the air conditioning system resulting from representations with respect to the compressors and a breach of an implied warranty that the work was performed in a workmanlike manner are property damages "to the named insured's products arising out of the products or any part thereof" [exclusion (n)]. The term "named insured's products" is defined in the policy to mean ". . . goods or products manufactured, sold, handled or distributed by the named insured. . . ." Cotton States necessarily must be contending that the air conditioning system installed by Norrell in the Crowes' building in 1965 remained the named insured's product within the meaning of exclusions (n) and (o) so as to exclude coverage for damage to the system arising out of the named insured's products, the compressors, or reliance upon a representation or warranty made at any time with respect thereto. Under the particular facts of this case, this issue must be resolved in favor of the insured.
Clearly, an ambiguity exists between the products hazard coverage and the named insured's product exclusion. Other courts faced with these two provisions have held that an ambiguity exists and have limited the exclusion to apply only to that part of the work or product which caused the damage. See: Pittsburg Bridge and Ironworks v. Liberty Mutual InsuranceCo., 444 F.2d 1286 (3rd Cir. 1971); Cotton States Insurance Co.v. Diamond Housing, etc., 430 F. Supp. 503 (N.D.Ala. 1977); S.L.Rowland Construction Co. v. St. Paul Fire and Marine Co.,72 Wn.2d 682, 434 P.2d 725 (1967).
In Cotton States Insurance Co. v. Diamond Housing, etc., supra at 507, Cotton States made the identical argument it advances here, with identical policy provisions. In rejecting that argument, Judge Foy Guin said:
 ". . . this court agrees with the reasoning of the court in [citing Pittsburg Bridge and Ironworks v. Liberty Mutual Insurance Co. and S.L. Rowland Construction Co. v. St. Paul Fire and Marine Co., supra], in holding that an exclusion of the nature present in this case is ambiguous when applied to a fact situation such as the one here. As those courts pointed out, it is not clear whether the exclusion applies only to the part of the entity which caused the damage or to the entire entity (mobile home) itself which the insured sold. More specifically, the court finds an ambiguity between the definitions of `products hazard' and `named insured's products' as they are defined in the policy and exclusion (f) to said policy. . . ."
We likewise find an ambiguity between these policy provisions. Such ambiguities must be resolved in favor of the insured. See: Billups v. Alabama Farm Bur. Mut. Ins. Co.,352 So.2d 1097 (Ala. 1977). Because an ambiguity exists affecting the construction of the "named insured's products" exclusion, the provision must be construed to apply only to the repair parts supplied by the insured, the compressors, and not to the air conditioning system installed in 1965. It had clearly become the property of the Crowes and was not, at the time of the repair, a product of the insured. *Page 275 
Cotton States also argues that the allegations made the basis of the Crowes' complaint does not constitute an "occurrence" as defined in the policy. We cannot agree. The definition of "occurrence," read in conjunction with the definition of products hazard coverage, clearly shows that "reliance upon a representation or warranty" is an "occurrence" covered by the policy.
We have carefully considered all of the contentions advanced by Cotton States; and we agree with the trial court that Cotton States owes Norrell a defense to the Crowes' suit under the products hazard provision of the policy and is liable for any recovery resulting from the loss or use of the air conditioning systems as a result of Norrell's misrepresentation or breach of implied warranty.
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.