This is an appeal by Commercial Union Assurance Company from a declaratory judgment which held that Commercial Union was obliged by a policy of insurance to defend The Glass Lined Pipe Company, Inc. in an action brought in Minnesota against it. We reverse and remand.
The policy in question was of a type described as a Comprehensive General Liability Insurance, insuring against bodily injury and property damage liability. Under those coverages the contract recites:
 The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
Coverage A. bodily injury or
 Coverage B. property damage to which this insurance applies caused by an occurrence . . .
An "occurrence" is defined in the policy as:
 [A]n accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured; . . .
"Property damage" is defined in the policy as:
 (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period. . . .
One of the general liability hazards insured against was a "products hazard," defined in the policy as including:
 [P]roperty damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.
The policy also expressed certain exclusions from liability:
This insurance does not apply:
. . . . .
 (p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property *Page 1307 
are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;
The Minnesota action arose out of the construction of a sewage disposal plant. Hayes Contractors, Inc. was a subcontractor on that job installing pumps, valves, pipe, hangers, supports and related mechanical systems. Hayes used cast iron pipe supplied by American Cast Iron Pipe Company which, under Hayes' directions, sent the pipe to Glass Lined for installation of a glass lining inside the pipe according to a purchase order from Hayes which was accepted by Glass Lined. Following shipment of this pipe and installation of a portion of it, a dispute arose over the quality of the glass lining. Ultimately Hayes sued Glass Lined for damages based upon negligence, breach of warranties, and injuries to business reputation. The damages claimed were amounts of money to compensate Hayes for costs of transportation, relining the pipe, and exemplary damages.
Commercial Union declined to defend the Minnesota action, and Glass Lined brought this suit for declaratory relief. The trial court decided, among other things, that Exclusion (p), excluding damages for certain events when the insured's products or work or property are withdrawn from the market or use, was inapplicable because the subject matter was not withdrawn by the insured; and that the defendant, Commercial Union, was obligated to defend Glass Lined in the Minnesota action and to pay any judgment against Glass Lined arising from the negligence and/or the breach of warranties claims.
The defendant insurance company has appealed from that decree on the ground that the evidence undisputedly establishes that the claims asserted by the plaintiff are specifically excluded under the policy.
Initially we recite some pertinent language from AetnaInsurance Co. v. Pete Wilson Roofing Heating Co., 289 Ala. 719,723, 272 So.2d 232, 235 (1973):
 The law in Alabama is clear that insurance companies have the right, in the absence of statutory provisions to the contrary, to limit their liability and write policies with narrow coverage. . . . It is also true that the courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions, by judicial interpretation . . . . (citations omitted) [Cf. Westchester Fire Ins. Co. v. Barnett Millworks, Inc., Ala., 364 So.2d 1137 (1978)]
In Aetna the subject matter of the suit was a roof constructed and unconditionally guaranteed by a subcontractor. Subsequently the roof leaked and the subcontractor was sued. His contractual liability carrier denied coverage under a policy exclusion identical to (p) here. Because the complaint claimed damages resulting from the contractor's repair and replacement of the roof constructed by the insured subcontractor, this Court held that an exclusion ((p) here) specifically applied because the roof in question was the subcontractor's "product."
In its criticism of the aptness of Aetna to this case, the plaintiff notes that the policy in Aetna was a contract liability policy rather than a products liability policy as is the case here. It is true that the cause of action in Aetna was based upon a contractual liability policy, whereas the claim against the plaintiff here is based upon a comprehensivegeneral liability policy. The decision in Aetna, however, was not governed by the type of policy but rather upon the language of the specific exclusion contained in the policy.
Were the damages claimed in the Minnesota suit "for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by the named insured"? The record requires an affirmative answer to this question. In addition to the allegations of the complaint alluded to earlier, the deposition of Dale Bickerstaff, the Hayes project manager of this job, was admitted into evidence. He testified that his decision controlled the issue of whether or not the pipe furnished by Glass Lined would be used, and that he would be familiar with the *Page 1308 
damages sustained by his firm in the event that pipe could not be used. In explaining those damages he referred to the necessity of shipping that pipe to another company in Pennsylvania, having the glass lining replaced, and shipment back for installation. He said "we had to tear out a large part of the material . . . already installed" and "provide personnel and machinery to . . . inspect every single piece of pipe over again on the project." Some was reinstalled; the other was shipped to Pennsylvania, with shipping charges and additional material charges incurred thereby. Some of the pipe originally ordered from Glass Lined was paid for but never shipped. Some of the inferior pipe was installed only after Hayes gave the owner-builder a credit, at the expense of Hayes. Damages were also sustained due to a delay in construction, and for extra work performed in additional inspections. Because of general injury to Hayes' reputation and goodwill, damages were also claimed, as well as attorneys' fees. He also stated that when the unacceptable pipe was relined, seventy-five per cent of the actual pipe was re-used, and in the case of the remainder he determined that it was "more economical" to purchase new pipe. According to Bickerstaff, "There are two problems: One, it [the pipe] didn't meet specifications; two, was workmanship of the installation of the glass." He conceded that there was nodamage caused to any other parts of the project because thepipe did not function properly. No walls were taken down and nodamage was done to the pipe itself. He added that the pipe in question was to be used to pump effluent from sewage, and was not to be used until the plant was completed.
According to this evidence it is clear that the damages claimed by Hayes were "for the withdrawal, inspection, repair, replacement, or loss of use of . . . or work completed by the named insured." Each of the items of damage claimed by Hayes relates to and arises from these specified circumstances.
Glass Lined insists, however, that Exclusion (p) refers only to situations in which the products are withdrawn by theinsured, and that is the interpretation placed upon the exclusion by the trial court. We cannot approve such a construction. The language is clear and unambiguous. There are no words of limitation concerning the identity of the party who might withdraw the products or work completed from the market. This conclusion is strengthened by the last portion of the exclusion which deals with "any property of which such products or work form a part. . . ." That portion itself accommodates the circumstance of a withdrawal by a purchaser of the insured's product who uses that product as a component part of his own and who withdraws his product due to a defect in a component supplied by the insured. Chambers Gasket Mfg. Co.v. General Ins. Co. of America, 29 Ill. App.3d 998,331 N.E.2d 203 (1975), is a case in point. A valve manufacturer purchased a supply of gaskets which it installed in its finished products. The gaskets proved defective and so the valve manufacturer sued the manufacturer of the gaskets. The action was based upon breaches of express and implied warranties and negligence, and sought damages measured by the value of the gaskets and the cost of repairs. The gasket manufacturer's insurance policy was "Blanket Liability Insurance." Coverage was denied and that decision was upheld in both the trial court and on appeal. It is significant that the policy contained an exclusion in the exact language of Exclusion (p) here. On appeal the Illinois court noted that the policy in question was a liability policy, not one insuring either the property or the work of the insured. "A liability policy," it stated, "is not intended to cover customer dissatisfaction or refunds made on the defective product itself," and thus the cost of the gaskets was not covered. On the cost of replacing the gaskets already installed, that court referred to an exclusion dealing with property damage due to repairing or replacing defective goods manufactured by the insured which effectively removed coverage. It could have applied the exclusion in issue *Page 1309 
here (p) with equal force, however, because it stressed the fact that there was no destruction of or damage to the valves.
Hamilton Die Cast, Inc. v. United States F. G. Co., 7 Cir.,508 F.2d 417 (1975) is an even closer case. Die Cast had agreed with a sporting goods company to supply the latter with tennis rackets meeting certain specifications and qualities. The sporting goods company later sued Die Cast, claiming damages because it could not supply its demand due to an insufficient supply, it was required to refund the purchase prices of defective rackets, and its business reputation was damaged. Die Cast's insurance carrier, under its comprehensive general liability policy, denied a defense and coverage, and this denial was upheld in the trial court and on appeal.
One of the two reasons given by the court for upholding the denial of coverage dealt with the application of an exclusion exactly like (p) here:
 [D]amages claimed for the withdrawal . . . of the Named Insured's products . . . or of any property of which such products or work form a part, if such products, work or property are withdrawn . . . from use because of any known or suspected defect or deficiency therein.
This exclusion, it was held, was
 "designed to exclude from coverage costs incurred by the withdrawal of goods from the market. . . ." Under the language of Exclusion N [(p) here], it is immaterial that the withdrawal was not by the insured. [emphasis added]
Finally, in both brief and argument the appellee contends that the exclusions here seek to avert liability from the very occurrences for which the policy was procured. We cannot agree. The effect of Exclusion (p) is to exclude claims for damages caused by the purchaser's withdrawal of the insured's products from use due to a deficiency in them. Such a result does not affect other possible instances of product liability, such as those in which damage occurs to a person, or to property other than the product of the insured itself. Wollard AircraftEquipment, Inc. v. Traficant, Fla.App., 266 So.2d 56 (1972).
We have concluded that Exclusion (p) is applicable under the pleadings and evidence in this case to exclude the obligation of Commercial Union to defend the Minnesota action brought by Hayes against Glass Lined or to pay any judgment rendered therein. This conclusion pretermits consideration of points raised dealing with other terms of the insurance policy. The trial court's decree must be, and is, reversed and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and EMBRY, JJ., concur.