This is an appeal by the plaintiff, United States Fidelity and Guaranty Company (USF G), from a declaratory judgment involving the construction of a liability insurance policy containing products hazard coverage. The cause was submitted on the pleadings in the case and the policy of insurance issued by USF G to defendant Andalusia Ready Mix, Inc. (Andalusia Ready Mix). The trial court entered a final judgment declaring that USF G has an obligation to defend and to pay any judgment rendered in a lawsuit brought by Will M. Gregory, Inc. (Gregory) against Andalusia Ready Mix. The appellant obtained a stay of that action, which has been extended pending the outcome of this appeal.
The issues raised on this appeal are as follows:
 1. Does the complaint in the underlying action contain allegations of damage that USF G is contractually obligated to defend for Andalusia Ready Mix?
 2. Does the complaint in the underlying action contain allegations of damage that USF G would be contractually obligated to pay for Andalusia Ready Mix, if proven at trial?
We answer these questions in the affirmative. USF G is obligated to defend Andalusia Ready Mix in the suit brought by Gregory, and must pay any judgment in that suit except for damages attributable to the removal and replacement of the grout itself.
The relevant facts in this case are as follows:
Appellant USF G issued a policy of insurance to defendant Andalusia Ready Mix. The policy was comprehensive general liability insurance including products hazard coverage. The contract provides:
 The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage *Page 870 
 to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage. . . .
The policy provides that when used therein:
 "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured. . . .
 "products hazard" includes bodily injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others;
"property damage" means:
 (1) physical injury or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or
 (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
The policy period in this case was April 1, 1979, through April 1, 1980.
During the term of the policy, Andalusia Ready Mix sold Gregory a material known as "grout" for use in constructing a water sewage treatment plant near Florala, Alabama. In the lawsuit filed by Gregory against Andalusia Ready Mix during the term of the USF G policy, the following was alleged:
Count Three
 . . . Plaintiff avers that the grout which Defendant furnished to Plaintiff was defective. . . . Plaintiff further avers that due to the defective quality of said grout, it was necessary to do extensive repairing and remodeling of said Waste Water Treatment Plant . . . which included the purchase of additional grout and materials and the payment by Plaintiff to mechanics and laborers who performed the corrective work and installed the new materials. Plaintiff avers that it was delayed in completing the Waste Water Treatment Plant and as a result thereof, Plaintiff sustained damages and additional costs for labor and materials, overhead and interest. Plaintiff claims damages as aforesaid. . . . [emphasis added].
USF G refused to defend the suit brought by Gregory, or to pay any damages that may be awarded therein against Andalusia Ready Mix. As a result, appellant brought this suit for declaratory relief. The trial court rendered a judgment in favor of Andalusia Ready Mix based solely on the pleadings in this action and the underlying action, and the policy of insurance. USF G appeals.
In a recent decision concerning USF G's obligations under a policy of insurance similar to the one in the instant case, this court held that "if [an] occurrence or accident causes damage to some other property than the insured's product, the insured's liability for such damage becomes the liability of the insurer under the policy." United States Fidelity Guar.Co. v. Bonitz Insulation Co. of Ala., 424 So.2d 569, 573 (Ala. 1982). This being the rule, our inquiry initially must be whether there was an "occurrence" in the case sub judice.
In Cotton States Mutual Insurance Co. v. Norrell Heating Air Conditioning Co., Inc., 370 So.2d 270 (Ala. 1979), this court considered a policy identical to the one issued to Andalusia Ready Mix by USF G. The court held, contrary to the argument of the insurer, that "[t]he definition of `occurrence,' read in conjunction with the definition of products hazard coverage, clearly shows that `reliance upon a representation or warranty' is an `occurrence' covered by the policy." 370 So.2d at 275. This holding is in agreement with the opinion of the Supreme Court of Washington in Yakima CementProducts Co. v. Great American *Page 871 Insurance Co., 93 Wn.2d 210, 608 P.2d 254 (1980). In that case the court interpreted the term "accident," used there as in this case in defining "occurrence," "in the context of the product being manufactured by the insured and the kind of losses sustained in the event of a defect in manufacture."93 Wn.2d at 217, 608 P.2d at 258. The court in Yakima Cement
concluded that the products' failure to perform the function for which they were manufactured and sold, "necessitating their removal, refabrication and repair constitute[d] an `accident' and thus an `occurrence' within the terms of the policy." Id.
USF G has conceded that the complaint in the underlying action alleges that the product in question failed to perform as warranted. Moreover, Gregory's reliance upon the product as warranted clearly was alleged, and has not been questioned by appellant. Hence, we conclude that there was an "occurrence" within the terms of the policy. Cotton States Mutual InsuranceCo. v. Norrell Heating Air Conditioning Co., Inc., 370 So.2d at 275.
We now turn to a consideration of whether the complaint in the underlying action contained an allegation of "property damage" sufficient to require USF G's defense and payment of damages in that action. As indicated above, "property damage" covered under a policy of insurance such as the one issued to Andalusia Ready Mix by USF G is damage to property other than the insured's product. United States Fidelity Guar. Co. v.Bonitz Insulation Co. of Ala., 424 So.2d at 573. In its complaint against Andalusia Ready Mix, Gregory alleges that the defective grout caused the waste water treatment plant to be defective. Though the complaint contains no elaboration of the resultant defects of the plant, it does include further allegations that the defective condition of the plant, as opposed to the grout, necessitated "extensive repairing andremodeling of [the] Water Treatment Plant . . . which included the purchase of additional grout and materials . . ." (emphasis added). Based on this language, we hold that the trial court reasonably could have concluded that injury might have been done to property other than the insured's product, for which USF G is required to provide a defense and to pay damages.
At this point, we must consider USF G's contention that all damages which Andalusia Ready Mix might become obligated to pay in the underlying suit are not covered because of various exclusions in the policy. The exclusions relied upon by appellant are as follows:
Exclusions
This insurance does not apply:
 (m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
 (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or
 (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;
 but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;
 (n) to property damage to the Named Insured's products arising out of such products or any part of such products;
 (o) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
 (p) to damages claimed for the withdrawal; inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property *Page 872 
are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.
Exclusion (m) explicitly pertains to "loss of use of tangible property." This exclusion is inapplicable in the instant case because the complaint in the underlying action does not include a claim for loss of use.
In United States Fidelity Guar. Co. v. Bonitz InsulationCo. of Ala., supra, this court held that several of the exclusions, specifically (n) and (o), effectively preclude liability under the policy for damage to the named insured's product. 424 So.2d at 573. Hence, we conclude that USF G is not liable for the cost of the defective grout.
The effect of exclusion (p) on coverage was addressed by this court in Commercial Union Assurance Co. v. Glass Lined PipeCo., 372 So.2d 1305 (Ala. 1979). In that case, the party suing the insured indicated that
. . . there was no damage caused to any other parts of the project because the pipe [into which the insured's product was fitted] did not function properly. No walls were taken down and no damage was done to the pipe itself.
372 So.2d at 1308. The court concluded that "the effect of Exclusion (p) is to exclude claims for damages caused by the purchaser's withdrawal of the insured's products from use due to a deficiency in them." Id. at 1309. Consequently, the court held that exclusion (p) excluded the insurer's obligation to defend the insured and to pay a judgment rendered against it for its defective products' failure to perform as warranted.Id. The court noted, however, that its interpretation of exclusion (p) "does not affect other possible instances of products liability, such as those in which damage occurs to a person, or to property other than the product of the insureditself." Id. (emphasis added). Therefore, exclusion (p) should not be read to preclude USF G's defense of Andalusia Ready Mix and its payment of damages for injury to parts of the plant other than the grout, which failed to function as required.
Our decision in Commercial Union Assurance Co. v. Glass LinedPipe Co., supra, is in accord with the Supreme Court of Oregon's opinion in Wyoming Sawmills, Inc. v. TransportationInsurance Co., 282 Or. 401, 578 P.2d 1253 (1978), regarding an insurer's obligation under a policy of insurance like the one issued to Andalusia Ready Mix by USF G. In Wyoming Sawmills, the court only addressed the appropriateness of labor costs; however, the court's analysis is likewise applicable to other consequential damages and materials costs incurred in a similar circumstance. The court held:
. . . such portion, if any, of the labor expense for which claim is made as might be attributable to tearing out and putting back other parts of the building (as compared with the labor attributable to the actual removal and replacement of the studs [i.e.
the insured's product] after they have been uncovered) in order to replace the studs is within the coverage of the policy [emphasis added].
282 Or. at 408, 578 P.2d at 1257. Such holding is implicitly consonant with our conclusion that Gregory's allegations of "extensive repairing and remodeling" of the water treatment plant provided a sufficient basis for the trial court to require USF G to defend Andalusia Ready Mix and to pay any judgment, except for damages attributable to the actual removal and replacement of the grout itself, for those allegations must be read in connection with the additional allegations of the use of new grout and other materials as replacement for or supplementation of previously damaged materials or materials damaged in the process of alleviating the problem caused by the defective grout.
For all the above reasons, we affirm the trial court's judgment, except as to the order for USF G to pay damages for the removal and replacement of the defective grout itself, which we reverse; and we remand for proceedings not inconsistent with this decision. *Page 873 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.