ATLANTIC MUTUAL INSURANCE
COMPANY, petitioner, Appellant,

v.

The JUDD COMPANY, Harris Mechani-
cal Contracting Company, The Central
Foundry Company, Respondents.

No. C4–84–1595.

Supreme Court of Minnesota.

Jan. 10, 1986.

Douglas R. Archibald, Minneapolis, for appellant.

Ronald E. Martell & David Kastelic, St. Paul, for Judd Co.

Stanley E. Karon, St. Paul, for Harris Mechanical.

Al L. Vreeland, Tuscaloosa, Ala., for Central Foundry.

Walter T. Crownover, Tuscaloosa, Ala., Trustee in bankruptcy for Central Foundry.

AMDAHL, Chief Justice.

This case involves a declaratory judgment action in which appellant, Atlantic Mutual Insurance Company (insurer), sought a determination (1) whether exclusions in a comprehensive general liability (CGL) insurance policy issued to respondent, Judd Company (insured), operate to exclude coverage for certain claims made against insured by a third party, and (2) whether the exclusions also operate to relieve insurer of its obligation under the policy to defend insured against the claims. The trial court determined under stipulated facts that the policy exclusions prevented coverage for the damages claimed against insured but that insurer nonetheless had a duty to defend. The trial court also awarded insured attorney fees of $8,500 in defending the declaratory judgment action. The court of appeals, 367 N.W.2d 609 (Minn.App.1985), reversed on the issue of coverage, holding that the exclusions in the policy are inapplicable to the damages claimed, and affirmed on the issue of insurer's duty to defend and on the award of attorney fees. We affirm the decision of the court of appeals.

In January 1980, insured, a plumbing and heating supply wholesaler, entered into a contract with a plumbing and heating contractor for a construction project in Austin, Minnesota. Under the contract, insured was to furnish soil pipes and fittings for an underground sewage system. After the contractor had installed a number of the soil pipes and fittings, tests were performed to determine whether the pipes would withstand the pressure required of the sewage system. The tests revealed that some of the fittings leaked and that some of the pipes had hairline cracks. The defects allegedly occurred during the manufacturing process. Although the contractor was supplied new pipes and fittings at no additional charge, it allegedly spent about $116,000 locating the defects and repairing and replacing the pipes.

In August 1981 the contractor commenced suit against insured for expenses incurred in replacing defective pipes and fittings, pleading negligence and breach of express and implied warranties. At the time the defective pipes and fittings were sold to the contractor, insured was covered under a policy of CGL insurance issued by insurer.[1] Pursuant to the policy, insured tendered defense of the lawsuit to insurer.

Insurer investigated the claims brought by the contractor and commenced the present declaratory action, seeking to avoid the obligation to defend Judd in the main action and to ultimately provide coverage for any awarded damages.

The first issue raised by insurer in this appeal is whether the CGL policy provides coverage for the claims the contractor is

---

1. The policy coverage clause provides:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

 A. bodily injury or

 B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent * * *.

making against insured. Insurer argues that the contractor's action presents no "property damage" claims within the meaning of the policy's coverage provisions.[2] However, it raises this question for the first time in its appeal to this court. Only issues regarding applicability of the policy's exclusions were raised before the trial court and the court of appeals. Insured therefore argues that insurer is now precluded from raising the issue. We agree.

 The general rule is that a party is not entitled to raise an issue for the first time on appeal. *Morton v. Board of Commissioners*, 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974); *see Fingerhut Products Co. v. Commissioner of Revenue*, 258 N.W.2d 606, 608 n. 4 (Minn.1977); *AAMCO Industries, Inc. v. DeWolf*, 312 Minn. 95, 100, 250 N.W.2d 835, 838 (1977). We have held that the theory upon which a case is tried below becomes the law of the case and must be adhered to on appeal. *Crawford v. Woodrich Construction Co.*, 239 Minn. 12, 26, 57 N.W.2d 648, 656 (1953). Furthermore, a party is bound by stipulations made at trial. *Pampusch v. National Council of Knights & Ladies of Security*, 145 Minn. 71, 72, 176 N.W. 158, 158 (1920). Although insurer did not formally stipulate the issues to be considered at trial, counsel did acknowledge that the only determination sought was whether the policy exclusions apply to preclude coverage.[3] Therefore, we decline to consider the "property damage" issue.

The next issue is whether exclusions in the CGL policy operate to preclude coverage for the claims brought against the insured. At trial insurer relied upon several exclusions in the policy. On appeal, however, it argues only with respect to exclusion (p), which provides that the insurance policy does not apply:

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

Exclusion (p) is often called the "sistership" exclusion because it originated from an occurrence in the aircraft industry where all airplanes of a certain make were grounded by the federal government after one crashed and the others were suspected of having common structural defects. 2 R. Long, Law of Liability Insurance, App. § 15 (1966). The purpose of exclusion (p) has been described in the following manner:

The plain meaning and intent of [the exclusion] is that while the insurance covers damages for bodily injuries and property damage caused by the product that was defective or fails, it was never intended that the insurer would be saddled with the cost of preventing such defects or failure any more than it was intended that the insurer would pay the cost of avoiding the defect in the first place or preventing the first failure of the product to have been discovered to be in a defective or dangerous condition before the occurrence.

---

**2.** The policy defines "property damage" as"

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period * * *.

**3.** The following exchange took place:

THE COURT: The question is, is there coverage under the contract on these facts?

[COUNSEL FOR INSURED]: No, the coverage is there. It's just a question of the effect of the exclusions, whether the exclusions have any effect whatsoever on the litigation: (a), (m) or (p).

THE COURT: Well, the declaratory judgment action and counter-claim refer to the issue of coverage. That's the ultimate determination, I assume. But really what you want to know now is whether any of these exclusions relieves the plaintiff of its obligation to furnish coverage.

[COUNSEL FOR INSURER]: That is correct.

2 R. Long, Law of Liability Insurance § 11.11 (1983).

The sole authority which insurer relies upon in support of its argument that exclusion (p) precludes coverage of the claims against the insured is an Alabama case, *Commercial Union Assurance Co. v. Glass Lined Pipe Co.*, 372 So.2d 1305 (Ala. 1979). In that case the insured, a manufacturer of glass-lined pipe, sought coverage from its insurer to defend a suit brought by the contractor on construction of a sewage disposal plant. The contractor claimed that the lining in pipes supplied by the insured was deficient and that the pipes had to be relined, resulting in damages for expenses incurred in inspecting the pipe and for delay in construction. There was no other damage to the project; no walls were taken down and no damage was done to the pipe itself. *Id.* at 1308. On these facts, the Alabama Supreme Court held that the insurer's obligation to defend and indemnify the insured was precluded by exclusion (p). *Id.* at 1309.

Insurer argues that *Glass Lined Pipe* is directly on point with the issues presented here and, therefore, that exclusion (p) precludes coverage. A close reading of the Alabama case reveals, however, that the court addressed only one aspect of exclusion (p)—whether the damages claimed were "for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by the named insured"—and held in the affirmative. *See id.* at 1308. The court never specifically addressed the question raised here—whether "such products, work or property [were] withdrawn from the market or from use because of any known or suspected defect or deficiency therein."

A majority of courts that have considered the question have adopted the view that repair and replacement of *just* those products that actually failed in use, with no attempt to prevent future failures by removal of other similar suspect products, does not constitute withdrawal. *See Arcos Corp. v. American Mutual Liability Insurance Co.*, 350 F.Supp. 380, 385 (E.D.Pa.

1972), *aff'd in part and remanded in part*, 485 F.2d 678 (3d Cir.1973); *Champion v. Panel Era Manufacturing Co.*, 410 So.2d 1230, 1238 (La.Ct.App.), *cert. denied*, 414 So.2d 389 (La.1982); *Continental Casualty Co. v. Gilbane Building Co.*, 391 Mass. 143, 461 N.E.2d 209, 217 (1984); *Wyoming Sawmills, Inc. v. Transportation Insurance Co.*, 282 Or. 401, 408, 578 P.2d 1253, 1257 (1978); *Paper Machinery Corp. v. Nelson Foundry Co.*, 108 Wis.2d 614, 620, 323 N.W.2d 160, 163 (Wis.Ct.App. 1982); *Yakima Cement Products Co. v. Great American Insurance Co.*, 22 Wash. App. 536, 542–43, 590 P.2d 371, 374–75 (1979); *see also American Home Assurance Co. v. Libbey-Owens-Ford Co.*, 588 F.Supp. 766, 771 (D.Mass.1984) (where there was failure of only some of many identical windowpanes, damages resulting from removal of remaining windows which had not failed are excluded from coverage of the policy); *Charles E. Brohawn & Bros., Inc. v. Employers Commercial Union Insurance Co.*, 409 A.2d 1055, 1057 (Del.1979) (clause excludes coverage where the defect has been discovered and the product withdrawn or repaired prior to the product actually failing while in use). We have also adopted this view. In *Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450 (Minn.1978), the general liability insurer of a construction company brought a declaratory judgment action to determine coverage in regard to the company's liability for damages to an apartment building resulting from defective construction. The insurer asserted, among other things, that a "sistership exclusion" in the policy precluded the insurance company's liability. We held that the exclusion was inapplicable because the "apartment building in question was not withdrawn from the market because of a suspected defect in *another* building. It was withdrawn because it was damaged by defective construction." *Id.* at 455 (emphasis added).

■ Applying this view of exclusion (p) to the present case leads to the conclusion that the exclusion does not apply. The

record indicates that the only pipes and fittings which were repaired or replaced were those which had actually proven defective after being installed and tested. There is no evidence that other pipes or fittings which had not actually failed were removed or rejected. Accordingly, exclusion (p) is not applicable.

■ In addition to a promise to indemnify insured for any liability incurred as a result of covered damages, the CGL policy contains a promise to defend insured in any suit "against the insured seeking damages on account of such * * * damage, even if any of the allegations of the suit are groundless, false, or fraudulent." An insurer's obligation to defend arises where claims against the insured come within the coverage provisions of a CGL policy. *See Federated Mutual Insurance Co. v. Concrete Units, Inc.*, 363 N.W.2d 751, 757 (Minn.1985); *Inland Construction Corp. v. Continental Casualty Co.*, 258 N.W.2d 881, 883–84 (Minn.1977).

■ The insurer bears the burden of demonstrating that no duty to defend exists by showing that all parts of the cause of action fall clearly outside the coverage afforded by the policy. *Grain Dealers Mutual Insurance Co. v. Cady*, 318 N.W.2d 247, 251 (Minn.1982); *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389, 390 (Minn.1979); *Lanoue v. Fireman's Fund American Insurance Cos.*, 278 N.W.2d 49, 52 (Minn.1979). If any part of the cause of action against the insured arguably falls within the scope of coverage, the insurer must defend. *Johnson v. AID Insurance Co.*, 287 N.W.2d 663, 665 (Minn.1980). Because we have concluded that the policy exclusions are inapplicable, we also conclude that insured is entitled to be defended against the claims.

■ We also conclude that insured is entitled to the award of attorney fees in defending the declaratory judgment action. In the absence of contractual or statutory authorization, attorney fees are generally not allowed. *See Grain Dealers*, 318 N.W.2d at 251 n. 10. However, the insur-

ance policy provides that insurer will pay "reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation of any claim or suit." We have held that similar policy language authorized payment of attorney fees to an insured for the successful defense of a declaratory judgment action initiated by an insurer. *Security Mutual Casualty Co. v. Luthi*, 303 Minn. 161, 169–71, 226 N.W.2d 878, 883–85 (1975).

Affirmed.

PETERSON, J., took no part in the consideration or decision of this case.