BRYAN, Justice.
Shane Traylor Cabinetmaker, L.L.C. (“STC”), and Michael Shane Traylor sued American Resources Insurance Company, Inc. (“American Resources”), alleging breach of contract and bad faith, based on American Resources’ refusal to defend or to indemnify STC and Traylor on counterclaims filed against them by Robert L. Barbee and R.L. Barbee Builders, Inc. (hereinafter collectively referred to as “Barbee”), in a separate action. The circuit court entered a summary judgment in favor of American Resources, and STC and Traylor appealed. We affirm.

Facts and Procedural History

In 2005 and 2006, Barbee hired STC to perform cabinetry and woodworking on homes Barbee was building in Baldwin County (“the subject properties”). One of the subject properties was Robert L. Bar- *165 bee’s personal residence. In June 2007, STC and Traylor sued Barbee, alleging breach of contract, open account, work and labor performed, unjust enrichment, misrepresentation, and foreclosure on a mate-rialman’s lien related to the cabinetry and woodworking STC had done on the subject properties. STC and Traylor also requested a judgment declaring whether Robert L. Barbee had an ownership interest in STC and, if so, a judgment declaring that STC had been effectively dissolved on March 28, 2007.[1]
Barbee filed an answer and counterclaim, alleging breach of contract, money lent, money paid by mistake, negligence, misrepresentation, slander of title based on a lien placed on one of the subject properties, unjust enrichment, and conversion. Barbee also sought a judgment determining the respective ownership rights in STC and requested the dissolution of STC. In July 2008, Barbee amended its counterclaim, adding additional claims for interest and seeking mental-anguish damages on its slander-of-title claim.
STC and Traylor notified American Resources, with whom they had a business-liability insurance policy (“the policy”), of Barbee’s claims against them asserted in its counterclaim and requested that American Resources defend and indemnify STC and Traylor against those claims under the policy. American Resources refused, arguing that Barbee’s claims were not covered by the policy. STC and Traylor again requested that American Resources indemnify and defend them pursuant to the terms of the policy; American Resources again refused.
In November 2008, STC and Traylor sued American Resources in the Mobile Circuit Court, alleging breach of contract and bad faith. American Resources moved the circuit court for a summary judgment, arguing, among other things, that STC and Traylor had not identified an “occurrence” that would have triggered coverage under the policy and that American Resources had acted on the advice of counsel in denying coverage. The circuit court denied American Resources’ motion. In February 2011, STC and Traylor moved the circuit court for a partial summary judgment on their breach-of-contract claim. American Resources filed a response and a supplemental “cross-motion” for a summary judgment on both claims. In May 2011, American Resources amended its supplemental summary-judgment motion.
The circuit court held oral argument on the motions for a summary judgment, and, on September 6, 2011, the circuit court granted American Resources’ motion and entered a summary judgment in its favor *166 on STC and Traylor’s claims. The circuit court found, among other things, that “the evidence shows that there has been no occurrence, and an occurrence was necessary to trigger potential coverage under the terms of the policy described in the Complaint.” The circuit court also found that “if there had been an occurrence, then this Court would hold that [STC and Tray-lor’s] alleged claims [were] also excluded from coverage by [various exclusion provisions] in the relevant policy, and further, by the fact that [American Resources] at all times relied upon the advice of counsel in addressing the claim made by [STC and Traylor].”
STC and Traylor moved the circuit court to alter, amend, or vacate its judgment. After additional oral argument, the circuit court denied STC and Traylor’s motions, and STC and Traylor appealed.

Issues

STC and Traylor present three issues for this Court’s review on appeal: (1) whether “Barbee’s [counterclaim in STC and Traylor’s action against Barbee, as amended,] allege[d] an occurrence for which [American Resources] was required to provide ... a defense and coverage under [the] policy”; (2) whether “Bar-bee’s [counterclaim, as amended,] allege[d] a cause of action against [STC and] Traylor for which [American Resources] was required to provide [them] with a defense and coverage under the ‘Products — completed operations hazard’ coverage provisions”; and (3) whether “[American Resources] [was] entitled to rely upon [various] ... purported exclusions [in the policy] or the advice of counsel defense to deny [STC and] Traylor a defense and coverage for Barbee’s [counterclaim].”

Standard of Review

“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004) (quoting West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).

Analysis

STC and Traylor first argue that the circuit court erred in entering a summary judgment in favor of American Resources because, they argue, Barbee’s counterclaim, as amended, alleges an occurrence that triggers a duty to provide coverage under the policy. The policy provides, in pertinent part:
“a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’, *167 property damage’ or ‘personal and advertising injury’ to which this insurance applies. We will have the right and duty to defend the insured against any ‘suit’ seeking those damages. However, we will have no duty to defend the insured against any ‘suit’ seeking damages for ‘bodily injury’, ‘property damage’ or ‘personal and advertising injury’, to which this insurance does not apply. We may at our discretion, investigate any ‘occurrence’ and settle any claim or ‘suit’ that may result....
[[Image here]]
“b. This insurance applies:
“(1) To ‘bodily injury’ and ‘property damage’ only if:
“(a) The ‘bodily injury’ or ‘property damage’ is caused by an ‘occurrence’ that takes place in the ‘coverage territory’;
“(b) The ‘bodily injury’ or ‘property damage’ occurs during the policy period; and
“(c) Prior to the policy period, no insured listed under Paragraph C.l. Who Is An Insured and no ‘employee’ authorized by you to give or receive notice of an ‘occurrence’ or claim, knew that the ‘bodily injury' or ‘property damage’ had occurred, in whole or in part.... ”
(Emphasis added.)
An “occurrence” is defined in the policy as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” In its summary judgment, the circuit court stated:
“Where there has been no occurrence, there can be no coverage and there can be no duty to defend. This is because ‘it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action.’ [Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So.2d 1006, 1012 (Ala.2005).] Accordingly, in order to prevail at trial and to recover, as a threshold matter, [STC and Traylor] must establish that there has been an occurrence as defined by the policy of insurance described in the Complaint. [STC and Traylor] cannot meet this burden.
[[Image here]]
“The definition of occurrence found in the policy in the case at bar is clear on its face and requires an accident, and that term has been clearly defined by the courts in this state.[2] What [STC and Traylor] describe is not an accident, but rather a business dispute between [STC and Traylor] and [Barbee] and nothing that [STC and Traylor] contend can transform that business dispute into an occurrence here.”
STC and Traylor argue that “Barbee’s counterclaim alleged that Traylor’s cabinet *168 work and wood working at [the subject properties] were defective and deficient in several particulars and had to be repaired or replaced.” STC and Traylor’s brief, at 41. They go on to argue that such allegations constitute an “accident” under this Court’s caselaw. However, in Town & Country Property, LLC v. Amerisure Insurance Co., 111 So.3d 699, 707 (Ala.2011) (“Town & Country I”), this Court made clear that “faulty workmanship itself’ simply does not constitute an accident or “occurrence” within the meaning of a comprehensive general-liability insurance policy (“a CGL policy”), such as the policy here. See also Town & Country Property, LLC v. Amerisure Ins. Co., 111 So.3d 699 (Ala.2012) (opinion on application for rehearing following opinion on return to remand).
In Town & Country I, we explained that “[t]his Court has previously considered cases requiring it to determine whether damage alleged to be the result of faulty workmanship is covered under a CGL policy, and, in each case, its decision has hinged, on the nature of the damage caused by the faulty workmanship.” 111 So.3d at 699 (emphasis added). This Court went on to contrast two cases: United States Fidelity & Guaranty Co. v. Warwick Development Co., 446 So.2d 1021 (Ala.1984) (“Warwick ”), and Moss v. Champion Insurance Co., 442 So.2d 26 (Ala.1983). Town & Country I, 111 So.3d at 707 . It noted that the Court in Warwick held that no recovery was available under a CGL policy for the cost of repairing or replacing the portions of a new house that had been defectively constructed by the insured. In contrast, we noted that “in Moss we held that there had been an occurrence for CGL policy purposes when the contractor’s poor workmanship resulted in not merely a poorly constructed roof but damage to the plaintiffs attic, interior ceilings, and at least some furnishings.” Town & Country I, 111 So.3d at 699.5
This Court then explained:
“Reading Moss and Wanviclc together, we may conclude that faulty workmanship itself is not an occurrence but that faulty workmanship may lead to an occurrence if it subjects personal property or other parts of the structure to ‘continuous or repeated exposure’ to some other ‘general harmful condition’ (e.g., the rain in Moss) and, as a result of that exposure, personal property or other parts of the structure are damaged.”
Town & Country I, 111 So.3d at 706.
As STC and Traylor themselves argue, Barbee’s counterclaim alleged “that the work by [STC and] Traylor ‘was not performed in a workmanlike manner ... requiring Robert L. Barbee to repair and/or replace the work performed by [STC and Traylor].” STC and Traylor’s brief, at 51 (emphasis added). Neither the counterclaim nor the amended counterclaim alleged damage to the subject properties as a result of the alleged faulty workmanship, additional repairs or remodeling to the subject properties necessitated by STC and Traylor’s allegedly faulty work, or any loss of use of the subject properties. Nor did the counterclaim or the amended counterclaim allege damage resulting from “ ‘continuous or repeated exposure’ to some other ‘general harmful condition’ ” (i.e., a condition other than STC and Tray-lor’s allegedly defective work). Town and Country I, 111 So.3d at 706.
STC and Traylor attempt to argue that, “[b]y reasonable inference, the Barbee counterclaim set[s] forth claims for damage[] to other property,” STC and Traylor’s brief, at 50, including damage for loss of use. They cite United States Fidelity & Guaranty Co. v. Andalusia Ready Mix, Inc., 436 So.2d 868 (1983), in support of this argument. Andalusia Ready Mix *169 also involved a CGL policy, which, like the policy here, defined an “occurrence” as an “accident, including continuous or repeated exposure to conditions.” 436 So.2d at 870. The CGL policy in Andalusia Ready Mix included a products-hazard provision, which provided, among other things, coverage for “bodily injury and property damage arising out of [Andalusia Ready Mix’s] products or reliance upon a representation or warranty made at any time with respect thereto.” 436 So.2d at 870.
Andalusia Ready Mix requested coverage under its CGL policy after it was sued by Will M. Gregory, Inc. (“Gregory”), for damage allegedly caused by defective grout Andalusia Ready Mix had sold to Gregory, which Gregory had used in constructing a water-treatment plant. Gregory argued that “ ‘due to the defective quality of said grout, it [had been] necessary to do extensive repairing and remodeling of said Waste Water Treatment Plant ... which included the purchase of additional grout and materials and the payment by [Gregory] to mechanics and laborers who performed the corrective work and installed the new materials.’ ” Andalusia Ready Mix, 436 So.2d at 870. Andalusia Ready Mix filed a declaratory-judgment action against United States Fidelity & Guaranty Company (“USF & G”), seeking a defense and indemnity on Gregory’s claims.
After reviewing the language of the products-hazard provision in the CGL policy and the relevant caselaw, the Court in Andalusia Ready Mix concluded:
“USF <& G has conceded that the complaint in the underlying action alleges that the product in question failed to perform as warranted. Moreover, Gregory’s reliance upon the product as warranted clearly was alleged, and has not been questioned by [USF & G]. Hence, we conclude that there was an ‘occurrence’ within the terms of the policy.”
436 So.2d at 871 (citing Cotton States Mut. Ins. Co. v. Norrell Heating & Air Conditioning Co., 370 So.2d 270, 275 (Ala.1979)). The Court went on to state:
“Though the complaint contains no elaboration of the resultant defects of the [water-treatment] plant, it does include further allegations that the defective condition of the plant, as opposed to the grout, necessitated ‘extensive repairing and remodeling of [the] Water Treatment Plant ... which included the purchase of additional grout and materials ... ’ (emphasis added). Based on this language, we hold that the trial court reasonably could have concluded that injury might have been done to property other than the insured’s product, for which USF & G is required to provide a defense and to pay damages.”
Andalusia Ready Mix, 436 So.2d at 871.
STC and Traylor argue that, like the complaint in Andalusia Ready Mix,
“Barbee’s counterclaim alleged specific defects in [STC and] Traylor’s product or work that give rise to the inference the such defects caused damage[] to occur to ‘other property’ at Barbee’s home. The counterclaim specifically alleged that the work by [STC and] Tray-lor ‘was not performed in a workmanlike manner ... requiring Robert L. Barbee to repair and/or replace the work performed by [STC and Traylor].... ’
“By reasonable inference, Barbee’s repair and/or replacement of [STC and] Traylor’s work in the kitchen area at [Robert L.] Barbee’s home rendered the kitchen area unuseable for such time as the remedial work was underway. The delays caused the inability to use the kitchen in the Barbees’ new home due' to the remedial work caused by [STC and] Traylor’s alleged breach of duty of workmanlike performance and arising out of [their] product or work. Such *170 allegations support the reasonable inference that damage would likely be done to cabinets, [S]heetrock, kitchen counter tops, flooring and other property in [Robert L.] Barbee’s home due to the repair and remediation of [STC and] Traylor’s product or work.”
STC and Traylor’s brief, at 51-53.
However, unlike Barbee’s counterclaim, the complaint in Andalusia Ready Mix expressly alleged damage to property other than a defect in Andalusia Ready Mix’s own product. Specifically, the complaint alleged that Andalusia Ready Mix’s defective grout had damaged the water-treatment plant, requiring repairs to and remodeling of the plant. In contrast, Bar-bee’s counterclaim alleged that STC and Traylor’s defective work “required] Robert L. Barbee to repair and/or replace the work performed by Traylor and STC.” It did not allege damage to other property resulting from that work. Andalusia Ready Mix is distinguishable in that regard, and we decline to infer loss of use or other injuries based on speculation as to damage that was not alleged in the counterclaim or the amended counterclaim. Thus, STC and Traylor have not demonstrated the existence of an “occurrence” in that regard that would trigger American Resources’ duty to defend or to indemnify them under the policy.
STC and Traylor also argue that “[t]he Barbee counterclaim alleged covered ‘bodily injury.’ ” STC and Traylor’s brief, at 47. “Bodily injury” is defined in the policy as “bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.” Bar-bee did allege in the counterclaim that Robert L. Barbee had suffered “emotional distress and mental anguish” as a result of STC and Traylor’s alleged representations “that [Traylor] would assign a 50% interest in [STC] [to Robert L. Barbee] in exchange for payments made by Robert L. Barbee ... and that Traylor and STC would complete the cabinets and woodworking for [the subject properties].” Barbee also added a request in the amended counterclaim for “mental anguish damages on behalf of Robert Barbee” on Bar-bee’s slander-of-title claim against STC and Traylor. STC and Traylor argue that this Court has recognized that claims alleging “mental anguish” fall within the definition of “bodily injury” as set forth in the policy, citing American States v. Cooper, 518 So.2d 708, 710 (Ala.1987) (quoting with approval the trial court’s judgment in which it concluded that “in the ... policy, ‘bodily injury’ includes sickness or disease which includes mental anguish”).
Assuming without deciding that mental anguish is included within the definition of “bodily injury” in the policy, STC and Traylor have nevertheless failed to demonstrate the existence of an occurrence as defined in the policy because Robert L. Barbee’s claims for mental-anguish damages did not arise from STC and Tray-lor’s allegedly defective work or some other general harmful condition resulting from that work. Instead, the alleged misrepresentations justifying mental-anguish damages related to Robert L. Barbee’s ownership interest in STC and STC and Traylor’s intention to complete the work under the contract, and, in the case of the slander-of-title claim, STC and Traylor’s placement of a lien on one of the subject properties. Thus, STC and Traylor have not demonstrated that Barbee’s claims for mental-anguish damages arose from an occurrence as defined in the policy or our caselaw.
STC and Traylor also argue that “[t]he Barbee counterclaim alleged coverage for [STC and] Traylor under the ‘products— completed operations hazard’ coverage provisions.” STC and Traylor’s brief, at *171 43. With certain exceptions, the “products — completed operations hazard” provisions in the policy contemplate coverage for property damage or bodily injury “arising out of ‘your product’ or ‘your work,’ ” referring to the insured’s product or work. The policy defines both “your product” and “your work” as including “warranties and representations ... with respect to the fitness, quality, durability, performance or use of’ the product or work. In light of these provisions, STC and Traylor attempt to construct an argument based on Andalusia Ready Mix and Cotton States, two cases in which this Court held that similar products-hazard clauses afforded coverage for losses resulting from breaches of warranty and misrepresentations.
However, STC and Traylor have not identified any breach-of-warranty claims alleged in Barbee’s counterclaim, as amended. Moreover, the misrepresentations alleged in the counterclaim relate to Robert L. Barbee’s ownership interest in STC and to STC and Traylor’s promise to complete the work on the subject properties under the contract. They do not relate to “the fitness, quality, durability, performance or use of’ STC and Traylor’s work. The representations here are distinguishable in that regard from those in Cotton States and Andalusia Ready Mix, which related, at least to some extent, to the quality of the work performed by the insureds in those cases[3] and fall outside the scope of the “products — completed operations hazard” provisions in the policy. Thus, STC and Traylor have not demonstrated that the counterclaim, as amended, alleges property damage or bodily injury “arising out of ‘[their] product’ or ‘[their] work’ therefore, they are not entitled to coverage under the policy in that regard.

Conclusion

For the foregoing reasons, we hold that STC and Traylor have not presented substantial evidence of an “occurrence” that would trigger American Resources’ duty under the policy to defend or to indemnify STC and Traylor on the claims asserted against them in Barbee’s counterclaim and amended counterclaim, nor have they presented substantial evidence that American Resources was required to provide them with a defense and to indemnify them under the “products — completed operations hazard” provisions in the policy. Therefore, they have not rebutted American Resources’ prima facie showing that there is no genuine issue of material fact, and the summary judgment in favor of American Resources is due to be affirmed. Our decision in this regard pretermits consideration of STC and Traylor’s arguments regarding the applicability of various exclusion provisions of the policy or the viability of American Resources’ advice-of-counsel defense.
AFFIRMED.
MOORE, C.J., and STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs specially.

. STC and Traylor argue that, in December 2006, after much urging by Robert L. Barbee, Traylor executed an “Assignment of Interest,” transferring a 50% ownership interest in STC to Robert L. Barbee. Traylor also executed a related operating agreement, which had been prepared by Barbee's attorney.
According to STC and Traylor, Robert L. Barbee did not execute the assignment of interest or the operating agreement until March 28, 2007. STC and Traylor argued that several times between December 2006 and March 28, 2007, Traylor informed Robert L. Barbee that he was revoking his decision to transfer ownership to Robert L. Barbee and that the only business relationship between STC and Barbee was the one that had existed prior to Traylor's execution of the operating agreement and the assignment of interest. On March 29, 2007, Traylor filed in the Mobile Probate Court a "Declaration of Membership and Status” on behalf of STC, declaring that he had revoked his intention to transfer ownership to Robert L. Barbee and that STC was still a single-member limited-liability company. According to STC and Traylor, Robert L. Barbee never filed the assignment of interest or the operating agreement with the probate court.

. This Court has stated:
"Merchant[ & Farmers Bank's] policy with Hartford [Casualty Insurance Company] defines an ‘occurrence’ as 'an accident.’ The term 'accident' is not defined in the policy, but it is a commonly used word in the legal profession. In St. Paul Fire & Marine Insurance Co. v. Christiansen Marine, Inc., 893 So.2d 1124, 1136 (Ala.2004), this Court applied the following definition of 'accident' found in Black's Law Dictionary 15 (7th ed. 1999): ‘An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated.’ In United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Alabama, 424 So.2d 569, 572 (Ala.1982), this Court, citing Employers Insurance Co. of Alabama v. Rives, 264 Ala. 310, 87 So.2d 653 (1955), stated: 'The term ["accident”] has ... been variously defined as something unforeseen, unexpected, or unusual.’ "
Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So.2d 1006, 1011 (Ala.2005).

. The alleged misrepresentations in Cotton States included, among other things, representations as to the necessity and quality of cleaning performed on coils in an air-conditioning unit. .The. alleged misrepresentation in Andalusia Ready Mix related to the fitness and quality of the grout for use in constructing a water-treatment plant.