STUART, Justice.
Town & Country Property, L.L.C., and Town & Country Ford, L.L.C. (hereinafter collectively referred to as “T & C”), sued Amerisure Insurance Company and Amer-isure Mutual Insurance Company (hereinafter collectively referred to as “Ameri-sure”) and Amerisure’s insured, Jones-Williams Construction Company, Inc.,[1] in the Jefferson Circuit Court pursuant to Alabama’s direct-action statute, § 27-23-2, Ala.Code 1975, alleging that Amerisure was obligated to pay a $650,100 judgment entered in favor of T & C and against Jones-Williams in a separate action pursuant to a commercial general-liability insurance policy (“CGL policy”) Amerisure had issued Jones-Williams (“the Amerisure policy”).[2] The trial court entered a summary judgment in favor of Amerisure, and T & C now appeals. We affirm in part and remand with instructions.
I.
In January 1999, Jones-Williams contracted with Town & Country Property to construct an automobile sales and service facility for T & C in Bessemer. Jones-Williams then entered into contracts with various subcontractors to construct the facility, doing none of the actual construction work itself; construction was completed in August 1999. Town & Country Ford then leased the facility from Town & Country Property and began operating a Ford automobile dealership on the premises. Thereafter, T & C discovered various defects in the facility. Jones-Williams was notified of the defects and apparently made some attempts to correct them; however, on October 3, 2002, T & C sued Jones-Williams in the Jefferson Circuit Court, asserting various tort and contract claims stemming from the alleged faulty construction of the facility. Jones-Williams notified its insurer, Amerisure, of *702 the action, and Amerisure agreed to provide a defense in accordance with the terms of the Amerisure policy.
T & C’s claims against Jones-Williams were tried before a jury, and on September 4, 2007, the jury returned a verdict in favor of T & C, awarding Town & Country Ford $34,100 and Town <& Country Property $616,000. Following the entry of a judgment on the verdict, Amerisure indicated that it would not indemnify Jones-Williams for the judgment entered against it, and on October 80, 2007, T & C initiated the action underlying these appeals, alleging that the award entered against Jones-Williams was covered by the Amerisure policy and seeking payment from Ameri-sure. Amerisure denied liability and filed a counterclaim seeking a judgment declaring that there had been no occurrence or accident triggering coverage under the Amerisure policy and that, even if there had been an occurrence, the policy excluded coverage for damage caused by Jones-Williams’s own faulty work. T & C argued that the faulty construction of the facility was itself an occurrence triggering coverage and that the damage was not the result of Jones-Williams’s work but the work of the subcontractors Jones-Williams had employed.
On February 13, 2009, Amerisure moved for a summary judgment. On April 19, 2010, T & C filed a motion opposing Amer-isure’s summary-judgment motion and seeking a summary judgment on its own behalf. Amerisure and T & C thereafter each filed additional responses and/or supplements to then' motions, and on July 26, 2010, the trial court conducted a hearing on the pending summary-judgment motions. On August 26, 2010, the trial court entered a summary judgment in favor of Amerisure, holding that, in Alabama, “faulty construction is not an ‘occurrence’ under a [CGL] policy.” T & C now appeals.[3]
II.
We review T & C’s arguments on appeal pursuant to the following standard:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). *703 In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
III.
A valid judgment was entered in favor of T & C and against Jones-Williams. Accordingly, pursuant to the terms of the Amerisure policy, Amerisure is responsible for paying that judgment if the judgment was based on claims based on “property damage” caused by an “occurrence” as those terms are used in the Amerisure policy. The dispute before us is accordingly centered upon the interpretation of the Amerisure policy. The Amer-isure policy is itself an example of a CGL policy, which policies are widely used by contractors and generally employ standardized forms and terms. There is accordingly an extensive body of caselaw nationwide concerning the interpretation of such policies. In 2010, the Supreme Court of Indiana provided the following helpful background on the origination and object of these policies:
“Before discussing the issues at stake in this case, we provide some background information. CGL insurance policies are designed to protect an insured against certain losses arising out of business operations. Most CGL policies are written on standardized forms developed by an association of domestic property insurers known as the Insurance Services Office (‘ISO’). Hartford Fire Ins. Co. v. California, 509 U.S. 764, 772, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993). ‘[These] policies begin with a broad grant of coverage, which is then limited in scope by exclusions. Exceptions to exclusions narrow the scope of the exclusion and, as a consequence, add back coverage. However, it is the initial broad grant of coverage, not the exception to the exclusion, that ultimately creates (or does not create) the coverage sought.’ David Dekker, Douglas Green & Stephen Palley, The Expansion of Insurance Coverage for Defective Construction, 28 Constr. Law, Fall 2008, at 19, 20.
“The precursor of today’s standard commercial liability insurance contracts was promulgated in 1940 and has since undergone five principal revisions, the most recent of which came into use in 1986. Prior to 1986, the ISO had not significantly revised its standard commercial general liability form since 1973. Ernest Martin, Jr., Daniel T. Mabery, Erika L. Blomquist & Jeffrey S. Lowenstein, Insurance Coverage for the New Breed of Internet-Related Trademark Infringement Claims, 54 S.M.U. L.Rev. 1973, 1987-88 (2001) (‘ISO frequently makes minor revisions to its CGL form, but rarely undertakes a major, substantive overhaul.... The standard ISO form in existence before the 1986 revision was promulgated in 1973....’). ‘In the 1973 version of the [ISO’s CGL policy form], the work performed exclusion precluded coverage for property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.’ French v. Assurance Co. of Am., 448 F.3d 693, 700 (4th Cir.2006) (internal citations and quota *704 tions omitted) (emphasis added); see also 9A Eric Mills Holmes, Holmes’ Appleman on Insurance 2d § 132.9 at 152 (2002). The ‘on behalf of language was interpreted to mean that no coverage existed for damage to a subcontractor’s work or for damage to the insured’s own work resulting from a subcontractor’s work. See 9A Lee R. Russ, et al., Couch on Insurance 3d § 129:18 (2005); Holmes, supra, at 153.
“Many contractors were dissatisfied with this state of affairs because more and more projects were being completed with the help of subcontractors. See Russ, et al., supra, § 129:18 (‘Due to the increasing use of subcontractors on construction projects, many general contractors were not satisfied with the lack of coverage provided under [the 1973 ISO CGL] policies where the general contractor was not directly responsible for the defective work.’). In response to this dissatisfaction, beginning in 1976 an insured under the 1973 ISO CGL policy form could pay a higher premium to obtain a broad form property damage endorsement (the BFPD Endorsement) which effectively eliminated the ‘on behalf of language and excluded coverage only for property damage to work performed by the named insured. Id. Thus, liability coverage was extended to the insured’s completed work when the damage arose out of work performed by a subcontractor. Id.
“In 1986, as part of a major revision, the subcontractor exception aspect of the BFPD Endorsement was added directly to the body of the ISO’s CGL policy in the form of an express exception to the ‘Your Work’ exclusion. Id.; Limbach Co. LLC v. Zurich Am. Ins. Co., 396 F.3d 358, 362-63 (4th Cir.2005) (internal citations omitted). Thus, under the 1986 ISO CGL Policies, the ‘Your Work’ exclusion specifically provides that it ‘does not apply if the damaged work or the work out of which the damage arises was performed on [the insured contractor’s] behalf by a subcontractor.’ Appellants’ App. at 245. Copyrighted in 1994 and 1997, ... the CGL Polices at issue in this case post date the 1986 revisions and include a subcontractor exception to the Your Work’ exclusion.”
Sheehan Constr. Co. v. Continental Cas. Co., 935 N.E.2d 160, 162-63 (Ind.2010) (footnote omitted). The Amerisure policy in the present case is identical in all material respects to the CGL policies discussed in Sheehan. The initial grant of coverage in the Amerisure policy reads as follows:
“1. Insuring Agreement.
“a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies....
“b. This insurance applies to ‘bodily injury’ or ‘property damage’ only if: “(1) The ‘bodily injury’ or ‘property damage’ is caused by an ‘occurrence’ that takes place in the ‘coverage territory’; and “(2) The ‘bodily injury’ or ‘property damage’ occurs during the policy period.”
The Amerisure policy further defines “property damage” as “[p]hysieal injury to tangible property, including all resulting loss of use of that property” and “[l]oss of use of tangible property that is not physically injured.” Finally, it also defines “occurrence” as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” Moreover, consistent with the 1986 revision, the Amerisure policy contains an exclusion, commonly denom- *705 mated the “your-work exclusion,” excluding coverage for any “ ‘[property damage’ to ‘your work’ arising out of it and included in the ‘products-completed operations hazard,’ ” and an exception, commonly denominated as the “subcontractor exception,” providing that the your-work exclusion “does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.” See Sheehan, 935 N.E.2d at 164 (describing terms of the CGL policy issued in that case identical to the terms in the Amerisure policy). In practical effect, the your-work exclusion and the subcontractor exception operate to exclude coverage for property damage caused by work performed by the insured contractor on his own behalf but to restore coverage for property damage caused by work performed by a subcontractor on behalf of the insured contractor. Both the your-work exclusion and subcontractor exception are implicated, however, only if there is first determined to be an “occurrence.”
This Court has previously considered cases requiring it to determine whether damage alleged to be the result of faulty workmanship is covered under a CGL policy, and, in each case, its decision has hinged on the nature of the damage caused by the faulty workmanship. Two eases originally decided on the same date in 1983 effectively illustrate the state of the law in this area: United States Fid. & Guar. Co. v. Warwick Dev. Co., 446 So.2d 1021 (Ala.1984) (“Warwick ”),[4] and Moss v. Champion Ins. Co., 442 So.2d 26 (Ala.1983). In Warwick, the purchasers of a newly built house sued the builder, stating claims of faulty construction and misrepresentation, after taking possession of the house and discovering extensive defects in its construction. The builder then alleged a third-party claim against its insurer after it sought coverage for the purchasers’ claims pursuant to a CGL policy, and its request for coverage was denied. At the conclusion of a trial on all those claims, the trial court awarded damages to the purchasers and held that the insurer was required to indemnify the builder for the purchasers’ claims. On appeal, however, this Court reversed the judgment against the insurer, stating:
“The first issue is whether [the insurer’s] policy provided coverage for alleged faulty workmanship and noncomplying materials in the construction of plaintiffs’ residence when the alleged damage was confined to the residence itself. [The insurer] contends that the policy affords no coverage because (1) no insurable loss occurred with the policy period and (2) damages to the work of the insured attributable to faulty workmanship are expressly excluded from coverage. After a review of the record and the policy involved, we conclude that the trial court incorrectly held that [the insurer] was bound under its policy of insurance to [the builder]. In our view, there was no ‘occurrence’ within the definition of ‘occurrence’ found in the pertinent policy provisions. The policy clearly states that the company will pay damages for: ‘A. bodily injury or B. property damage to which this insurance applies caused by an occurrence.’ The [insurer’s] policy defines ‘occurrence’ as ‘an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the In *706 sured.’ For a contrary holding under circumstances amounting to ‘an occurrence,’ see Moss v. Champion Ins. Co., 442 So.2d 26 (Ala.1983).”
Warwick, 446 So.2d at 1028. Thus, Warwick held that faulty workmanship itself is not an “occurrence.”
In Moss, however, a homeowner sued a contractor she had hired to reroof her house in order “to recover for damage she allegedly incurred due to rain which fell into her attic and ceilings because, as she claimed, the roof was uncovered much of the time that the re-roofing job was being performed.” 442 So.2d at 26. The contractor’s insurer argued that it was not required to provide a defense or to pay any judgment against the contractor because, it argued, the damage was not the result of an occurrence and was therefore not covered under the contractor’s CGL policy. Following a bench trial limited to deciding the insurance-coverage issue, the trial court ruled in the insurer’s favor, holding that the damage to the homeowner’s house was not the result of an occurrence. On appeal, we reversed the trial court’s judgment, stating:
“That the attempt was made to keep the roof covered as the work progressed was established by the testimony of [the homeowner] herself. That it became insufficient was not attributable to [the contractor], who, for aught that appears from the evidence, did not intend the damage, and who by his personal efforts could not have reasonably foreseen the negligence of his crews in their failure to follow his instructions. [The homeowner’s] complaint against him charged him with negligence (and breach of contract), not conscious acts made with intent to cause damage. His instructions establish his definite steps taken to prevent damage. And finally, after the ‘repeated exposure to conditions,’ the roof leaked. Thus, there was an ‘occurrence’ under the policy, and the [insurer] is obligated by the terms of the policy to defend the [homeowner’s] action and perform other duties contracted for thereunder.”
Moss, 442 So.2d at 29. Thus, in Moss we held that there had been an occurrence for CGL policy purposes when the contractor’s poor workmanship resulted in not merely a poorly constructed roof but damage to the plaintiffs attic, interior ceilings, and at least some furnishings. Reading Moss and Warwick together, we may conclude that faulty workmanship itself is not an occurrence but that faulty workmanship may lead to an occurrence if it subjects personal property or other parts of the structure to “continuous or repeated exposure” to some other “general harmful condition” (e.g., the rain in Moss) and, as a result of that exposure, personal property or other parts of the structure are damaged.
Accordingly, the trial court in this case properly relied on Warwick to hold that Amerisure was not required to indemnify Jones-Williams for the judgment entered against it insofar as the damages represented the costs of repairing or replacing the faulty work.[5] We *707 further note that the other Alabama cases cited by T & C in its brief support the distinction made in Warwick and Moss. See Alabama Plating Co. v. United States Fid. & Guar. Co., 690 So.2d 331, 336-37 (Ala.1996) (holding that insurer was required to provide coverage to company under a CGL policy for its costs associated with removing pollution from a stream on the company’s own property because damage to groundwater was not confined to the landowner); United States Fid. & Guar. Co. v. Armstrong, 479 So.2d 1164, 1167 (Ala.1985) (holding that insurer was required to provide coverage to sewer-system contractor under the terms of CGL policy where contractor was sued for damage resulting from raw sewage flowing onto an adjacent landowner’s property during construction); and United States Fid. & Guar. Co. v. Bonitz Insulation Co. of Alabama, 424 So.2d 569, 573 (Ala.1982) (“If damage to the roof itself were the only damage claimed by the [plaintiff), the exclusions would work to deny [the roofing contractor] any coverage under the [CGL] policy. The [plaintiff], however, also claims damage to ceilings, walls, carpets, and the gym floor. We think there can be no doubt that, if the occurrence or accident causes damage to some other property than the insured’s product, the insured’s liability for such damage becomes the liability of the insurer under the policy”).
We are mindful that some other jurisdictions have interpreted CGL policies differently. However, the position we reaffirm today is shared by the majority of jurisdictions that have considered the issue. See, e.g., Cincinnati Ins. Co. v. Motorists Mut. Ins. Co., 306 S.W.3d 69, 73 (Ky.2010) (“The majority viewpoint, however, appears to be that claims of faulty workmanship, standing alone, are not ‘occurrences’ under CGL policies.”). Still other jurisdictions, though they concede that faulty workmanship may constitute an occurrence, nevertheless hold that the cost of repairing or replacing the defective construction itself is not covered by a CGL policy because the defective construction does not constitute “property damage” as that term is used in CGL policies. See, e.g., Crossmann Cmtys. of North Carolina, Inc. v. Harleysville Mut. Ins. Co., 395 S.C. 40, 50, 717 S.E.2d 589, 594 (2011) (holding that the definition of “occurrence” in CGL policies is ambiguous and must therefore be construed in favor of the insured, but also clarifying “that negligent or defective construction resulting in damage to otherwise non-defective components may constitute ‘property damage,’ but the defective construction would not”). While differing in their rationales, both of these approaches are consistent with the general understanding that a CGL policy is intended “‘to protect an insured from bearing financial responsibility for unexpected and accidental damage to people or property’ ” while a performance bond is intended “ ‘to insure the contractor against claims for the cost of repair or replacement of faulty work.’ ” Essex Ins. Co. v. Holder, 372 Ark. 535, 539, 261 S.W.3d 456, 459 (2007) (quoting Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co., 354 F.Supp.2d 917, 923 (E.D.Ark.2005)). See also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 335, 908 A.2d 888, 899 (2006) (“To permit coverage in [cases where faulty workmanship damages the work product alone] would convert CGL policies into performance bonds, which guarantee the work, *708 rather than like an insurance policy, which is intended to insure against accidents.”).
IV.
T & C sued Amerisure seeking a judgment requiring Amerisure to pay the $650,100 judgment previously entered against Amerisure’s insured, Jones-Williams. The trial court entered a summary judgment in favor of Amerisure holding that it was not required to indemnify Jones-Williams because there had been no occurrence invoking coverage under the policy. For the reasons explained above, that judgment is now affirmed to the extent the awarded damages represented the costs of repairing or replacing the faulty work itself. We are remanding the case to the trial court so that it may consider arguments from the parties to determine if any of the damages awarded represented compensation for damaged personal property — e.g., computers and furnishings — or otherwise nondefective portions of the facility. That damage would constitute “property damage” resulting from an “occurrence,” and it would be covered under the terms of the Amerisure policy in light of the fact that all the construction work in this case was performed by a subcontractor and therefore the damage suffered as a result of that construction work would fall within the subcontractor exception to the your-work exclusion. Due return shall be made to this Court within 42 days of this opinion.
1100009 — AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.
1100072 — APPEAL DISMISSED AS MOOT.
MALONE, C.J., and WOODALL, BOLIN, PARKER, MURDOCK, SHAW, MAIN, and WISE, JJ., concur.

. T & C named Jones-Williams as a defendant based on Jones-Williams’s status as an indispensable party under § 27-23-2, Ala.Code 1975. See infra note 2. A default judgment was ultimately entered against Jones-Williams.

. Section 27-23-2 states:
"Upon the recovery of a final judgment against any ... corporation ... for loss or damage to property, if the defendant in such action was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment.”

. Two appeals were docketed in this case because there was some-uncertainty in the trial court regarding the finality of the summary judgment in favor of Amerisure. Although the trial court’s August 26, 2010, summary-judgment order disposed of all the claims between the remaining parties, T & C subsequently moved the trial court to explicitly make its judgment final pursuant to Rule 54(b), Ala. R. Civ. P. The trial court responded by entering an order allowing for an immediate review of the judgment pursuant to Rule 5, Ala. R.App. P.
On October 4, 2010, while preparing its Rule 5 petition for a permissive appeal, T & C nevertheless filed the appeal docketed as case no. 1100009 to protect its appellate rights in the event the August 26, 2010, judgment was, in fact, a final judgment such that permission to appeal or a Rule 54(b) certification was unnecessary. T & C subsequently filed its petition for permission to appeal pursuant to Rule 5 as well, which was docketed as case no. 1100072. Because the judgment entered by the trial court on August 26, 2010, did dispose of all the claims between the parties, it was a final judgment, and T & C's October 4, 2010, appeal of that judgment was both timely and proper. Accordingly, the appeal docketed as case no. 1100072 is dismissed as moot.

. On February 10, 1984, this Court withdrew its October 7, 1983, opinion in Warwick on rehearing and substituted a new opinion.

. It is unclear to this Court whether there is any basis upon which to conclude that the judgment entered against Jones-Williams was intended to compensate T & C for anything more than the cost of repairing and/or replacing faulty work. Amerisure acknowledges that there was some testimony at the trial of T & C’s action against Jones-Williams regarding damaged furnishings but states that T & C's counsel did not ask the juiy for any damages related to those claims, instead asking for an award equal to the amount T & C's expert testified it would take to replace and repair the faulty work. T & C's position is unclear. Accordingly, on remand, the trial court may hear arguments from the parties *707 on this point; however, the evidence upon which those arguments may be based is limited to that evidence already in the record. See, e.g., Ex parte Queen, 959 So.2d 620, 623 (Ala.2006) (holding that, on remand, the trial court was obliged to apply the law to the evidence already of record).