SHAW, Justice
(concurring in the result in part and dissenting in part).
As previous caselaw discussed in the main opinion notes, commercial general-liability (“CGL”) insurance policies like the one in this case provide coverage for an “occurrence,” which is defined, in part, as an “accident.” As illustrated in Moss v. Champion Insurance Co., 442 So.2d 26 (1983), such an “accident” might be the result of negligence on the part of the insured or its employees: in Moss, workers removed shingles from a roof and failed to properly cover the exposed structure to protect it during rainstorms. The resulting water damage, this Court held, was an “occurrence” or “accident” and covered by the policy. Id.
That said, our caselaw makes clear that faulty workmanship itself is not “damage” caused by an “occürrence” or “accident”; thus, the cost to repair or replace faulty workmanship is not covered by the policy. Town & Country Prop., L.L.C. v. Amerisure Ins. Co., 111 So.3d 699, 706 (Ala.2011). However, damage that is the result of faulty workmanship on the part of the insured contractor — like water damage to personal property caused by a leaky, poorly constructed roof — can constitute an “occurrence.” Id. This concept is consistent with the idea that the purpose of a CGL *159 policy is to protect the insured contractor from tort liability, but not to protect it from its own malpractice: “[A] CGL policy is intended “‘to protect an insured from bearing financial responsibility for unexpected and accidental damage to people or property” ’ while a performance bond is intended “ ‘to insure the contractor against claims for the cost of repair or replacement of faulty work.” ” ’ Town & Country, 111 So.3d at 707 (quoting Essex Ins. Co. v. Holder, 372 Ark. 535, 539, 261 S.W.3d 456, 459 (2007) (quoting' in turn Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co., 354 F.Supp.2d 917, 923 (E.D.Ark.2005))). There is no coverage to replace poor work, but there is coverage to repair damage caused by the poor work.
In the instant case, the work product of the contractor, Jim Carr Homebuilder, LLC (“JCH”), was a house built for Thomas Johnson and Pat Johnson. Parts of the house were faulty — the arbitrator identified improperly installed, sealed, or waterproofed flashings, windows, doors, porches, and roofing, and improper mortar and brickwork. All of this led to water leakage and damage to other parts of the house. Under Town & Country, the cost to repair and replace the faulty flashings, windows, doors, porches, roofing, and brickwork would not be covered as an “occurrence.”
Owners Insurance Company (“Owners”) contends on appeal that none of the water damage resulting from JCH’s poor work would be covered as an “occurrence.” Specifically, Owners alleges that an occurrence exists only when faulty workmanship leads to damage to property that was not the insured’s product. In other words, Owners contends that the water damage in this case is only an “accident” to the extent it damaged the Johnsons’ personal property or anything JCH did not build; to the extent the water damaged parts of the structure or items JCH constructed, Owners contends that that would not be an occurrence or accident. In support of its argument, Owners cites United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Alabama, 424 So.2d 569 (Ala.1982). In Bonitz, a contractor built a roof on a gym. The roof was not installed in a workmanlike manner and later leaked water, causing damage to the ceilings, walls, and flooring, all of which had not been constructed or installed by the contractor. In holding that the policy covered damage to the ceilings, walls, and flooring, but not to the faulty roof, this Court stated:
“If damage to the roof itself were the only damage claimed by the City of Midfield!, the property owner], the exclusions would work to deny Bonitz any coverage under the USF & G policy. The City of Midfield, however, also claims damage to ceilings, walls, carpets, and the gym floor. We think there can be no doubt that, if the occurrence or accident causes damage to some other property than the insured’s product, the insured’s liability for such damage becomes the liability of the insurer under the policy.”
424 So.2d at 573.
Owners broadly interprets this language in Bonitz — that there is coverage only for damage to “other property than the insured’s product” — to mean that there is no coverage for damage to any of the insured’s product. However, it appears from the above quotation that the phrase “other property than the insured’s product” was simply contrasting the faulty roof itself — the only product of the insured in that case — from anything else that was damaged, because coverage for the roof was barred by a separate policy exclusion. In other words, when the Court stated that property “other than” the insured’s product was covered, it was not stating *160 that an insured’s product would never be covered, it was stating only that the roof was not covered in that case because of an exclusion.
I see nothing explaining why damage to “other property” caused by faulty workmanship would be an “occurrence,” but damage to the insured’s work product caused by faulty workmanship in some other portion of the project would not be such an “occurrence.” As the main opinion notes: “If some portion of the Owners policy seeks to affect coverage by references to the nature or location of the property damaged, it is not the provision in the policy for coverage of occurrences. The policy simply does not define ‘occurrence’ by reference to such criteria.” 157 So.3d at 155. The replacement or repair of the faulty workmanship itself is not covered as an occurrence, but, consistent with prior caselaw, damage that results from faulty workmanship should be covered as an occurrence. I concur in the result with the main opinion’s conclusion on this issue.[6]
Owners raises another issue on appeal, however, that the main opinion fails to address. Specifically, the arbitrator identified numerous items of both faulty construction as well as damage that resulted from the faulty construction. In awarding $600,000 in damages, the arbitrator noted that the “repair” estimates received into evidence ranged from around $51,000 to over $600,000. As noted above, the cost to repair and replace the faulty work itself is not covered as an “occurrence” even if all resulting damage caused by the faulty wort is covered. Town & Country, 111 So.3d at 706. In order to affirm the entire award, this Court would have to arrive at the seemingly inconceivable conclusion that the arbitrator’s award did not compensate the Johnsons for the numerous items of faulty work identified in the arbitrator’s award.
Owners contends that JCH had the burden at trial of demonstrating which part of the arbitrator’s award was attributable to the excluded faulty work and which part' was attributable to the damage resulting from the faulty work, that JCH failed to meet that burden, and that, therefore, a judgment in its favor is required. Further, Owners notes that in Town & Country we remanded the case for a determination whether any of the subject judgment represented compensation for property damage resulting from the faulty work, as opposed to compensation for the faulty work itself, which would not be covered. I dissent from the failure of the main opinion to address these issues, and I would remand the cause for the trial court to determine what portion of the damages award is attributable to covered “occurrences” and which portion is not.

. Owners also contends on appeal that an exclusion in the policy bars coverage of damage to completed work. The main opinion notes that the face of the declarations page of the policy appears to indicate that JCH purchased extra coverage that would expressly provide an exception to this exclusion. Owners denies this, but I see no clear explanation as to what this extra coverage actually does; thus, I do not believe that Owners has demonstrated that the trial court erred in holding that this coverage supplied an exception to the exclusion.