STUART, Justice.
Timmy Blackmon and Stephanie Black-mon sued Eddie Powell d/b/a Powell Plumbing Company in the Pike Circuit Court, asserting negligence, wantonness, breach of implied warranties, and breach of contract after a water-supply line that Powell had installed in their house ruptured, causing extensive flooding and water damage. The trial court entered a summary judgment in favor of Powell; the Blackmons appeal. We affirm.
I.
In approximately April 2008, Timmy, a general contractor and homebuilder, approached Powell to do the plumbing for a new house the Blackmons were building as their personal residence. Powell had previously done work for Timmy on other construction projects, and Timmy states that he selected Powell to do the plumbing in his personal house because Powell was “reliable” and he and Powell had “a good relationship.” Timmy and Powell thereafter reached an oral agreement for Powell to do the plumbing in the house; Timmy later described the terms of that agreement as follows in his deposition:
“And we had a verbal agreement— [Powell] came out and looked at it, and we had a verbal agreement for him to plumb my house. We were supposed to supply the faucets and sinks. He was supposed to supply everything from the faucets, sinks — from the faucets and sinks down, including the supply line, drain lines, waterlines, plumbing lines, sewer lines to complete — to do a complete project on my house.”
Powell does not dispute these basic elements of their agreement, agreeing that the Blackmons were to supply the fixtures and, in return for an agreed-upon sum based upon the number of connections made, he was to install the fixtures and supply whatever else was needed to connect them to the main water and sewer lines and to make them functional.
In approximately September 2008, Powell went to the Blackmons’ house to install *3 a vessel sink and waterfall faucet in an upstairs half-bathroom. Stephanie had purchased the sink and faucet on the Internet from separate sources, and, when Powell arrived, the Blackmons had placed the boxes containing those items in the half-bathroom where they were to be installed, as was the Blackmons’ custom for plumbing fixtures they had purchased.[1] Upon opening the box containing the faucet, Powell discovered that two water-supply lines were included, and he accordingly used those supply lines during the installation to connect the hot and cold water to the faucet. After the installation was complete, Powell turned the water on to check for leaks and found none. Timmy also visually inspected the work and saw nothing wrong.
The next 18 months were apparently uneventful with regard to Powell’s plumbing installation, and the Blackmons and their guests used the sink and faucet in the upstairs half-bathroom without incident and without any signs of a problem or leakage. However, at some time on March 18, 2010, the cold-water-supply line running to the faucet broke at the point where the coupling threaded onto the base of the faucet, causing water to flood the bathroom and eventually other parts of the house. Timmy returned to the house at approximately 9:00 p.m. and, upon discovering the flooding, turned off the water-supply valve; however, at that point there was standing water throughout the house. He then telephoned Powell, who agreed to come over the next day.
Upon arriving at the house the next day, Powell tested the water pressure in the house and found it to be in the low to normal range and thus unlikely to have caused the water-supply line to rupture. Both Timmy and Powell agree that they have never seen a similar rupture in a water-supply line in all their years working as contractor and plumber, respectively, and, for all that appears, the rupture was apparently caused by some latent defect in the water-supply line that was not readily detectable. Notably, there is no evidence indicating that the rupture was attributable to any action or error committed by Powell during the installation.
On February 2, 2011, the Blackmons sued Powell, alleging that he was ultimately responsible for the damage to their house. Their complaint, as later amended, asserted claims of negligence, wantonness, breach of implied warranties, and breach of contract. The Blackmons subsequently moved the trial court to enter a summary judgment in their favor on all claims; Powell responded by also filing a motion for a summary judgment. Following an August 6, 2012, hearing on those motions, the trial court granted Powell’s motion, denied the Blackmons’ motion, and entered a judgment accordingly. The Blackmons’ subsequent motion to alter, amend, or vacate that judgment was denied by the trial court on November 26, 2012, and, on January 7, 2013, the Blackmons filed their notice of appeal to this Court.
II.
We review a summary judgment pursuant to the following standard:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is *4 entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
III.
The trial court entered a summary-judgment in favor of Powell on all four counts alleged by the Blackmons — negligence, wantonness, breach of implied warranties, and breach of contract. With regard to the negligence and wantonness claims, the Blackmons argue that Powell acted negligently or wantonly in installing a defective water-supply line in the upstairs half-bathroom. They do not argue that Powell committed any error during the actual installation process that caused the subsequent rupture; rather, his only error, they argue, was choosing to use the apparently defective supply line that came with the faucet. See the Blackmons’ brief, p. 14 (stating that “the claims of the Black-mons are not that Mr. Powell was deficient in his workmanship, it is that the product that he agreed to install and provide and was paid for as part of the contract, namely the supply line, which he consciously and voluntarily chose to use, failed”).
In completing the work the Blackmons contracted him to do, Powell had a duty to exercise due care. See Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So.2d 665, 679 (Ala.2001) (“At common law, a duty of due care can accompany a contractual obligation.... ”), and Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 258, 73 So.2d 524, 529 (1953) (“When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty — but does not imply a contract — to exercise due care in doing the act....”). The evidence in the record indicates that Powell installed the water-supply line in question and then tested it to verify that it was watertight, which it was. Timmy also reviewed the installation and apparently saw no problems, and the water-supply line thereafter worked as expected until the date of the rupture some 18 months later. As the party alleging negligence, the Blackmons bore the burden of putting forth evidence indicating that Powell had breached his duty to exercise due care; however, there is no evidence in the record that would indicate such a breach.
With regard to the Blackmons’ wantonness claim, there is no evidence indicating that Powell recklessly committed an act — or recklessly failed to commit a necessary act — that led to the ruptured water-supply line. See Armstrong Business Services, 817 So.2d at 679-80 (setting forth the elements of negligence and wantonness). Certainly, the mere fact that Powell used the new water-supply lines that were packaged with the faucet— which by all accounts appeared to be functional and which operated as intended for 18 months after the initial installation — is insufficient, without more, to create a genuine issue of material fact as to the negligence and wantonness claims. The summary judgment entered on the negligence and wantonness counts was accordingly proper.
*5 The analysis of the Blackmons’ breach-of-contract and breach-of-implied-warranty-of-workmanship claims is related. As this Court explained in Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 93 (Ala.2004), a breach-of-contract claim in a case like this is effectively the same as a breach-of-the-implied-warranty-of-workmanship claim:
“The [plaintiffs’] third allegation is that [the defendant homebuilder] breached the contract of sale by tendering a poorly built house. Specifically, the [plaintiffs] argue that [the defendant] contracted to build the house in accordance with the skill and abilities of a homebuilder and that [the defendant] failed to perform this contractual duty. While the [plaintiffs] characterize this as a cause of action for breach of contract, the cause of action is more accurately classified as one for the breach of the implied warranty of workmanship.
“The law implies a duty upon all contracting parties to use reasonable skill in fulfilling their contractual obligations. Sherrill v. Alabama Appliance Co., 240 Ala. 46, 50, 197 So. 1, 4 (1940); Mobile Life Ins. Co. v. Randall, 74 Ala. 170, 176-77 (1883). In the context of the sale of a new house, a builder-vendor such as [the defendant] is obligated to construct a house that it will offer for sale in a workmanlike manner. Stephens v. Creel, 429 So.2d 278, 280 (Ala.1983). This obligation manifests itself in the implied warranty of workmanship. While improper or faulty construction constitutes a technical performance of the contract and may survive a pure breach-of-contract action, an action alleging the breach of an implied warranty, such as the implied warranty of workmanship, can overcome this obstacle.”
Thus, in this case, Powell technically fulfilled his obligations under his contract with the Blackmons by completing the tasks he was hired to do, regardless of the quality of the plumbing services he provided. However, the Blackmons may nevertheless recover for any poor workmanship by way of a breach-of-the-implied-warranty-of-workmanship claim if there is evidence indicating that Powell failed “to use reasonable skill in fulfilling [his] contractual obligations.” 903 So.2d at 93. See also C.P. Robbins & Assocs. v. Stevens, 53 Ala.App. 432, 436, 301 So.2d 196, 199 (Ala.Civ.App.1974) (“It is a general rule in contracts for work or services that there is implied a duty to perform with that degree of skill or workmanship which is possessed by those of ordinary skill in the particular trade for which one is employed.”). We have discussed supra the evidence indicating that Powell exercised due care in the course of completing his plumbing work for the Blackmons and concluded that the Blackmons failed to put forth evidence refuting that evidence. Similarly, we hold that the Blackmons failed to put forth any evidence indicating that Powell did not perform his work with reasonable or ordinary skill. The trial court therefore properly entered a summary judgment in favor of Powell on the breach-of-contract and breach-of-implied-warranty-of-workmanship claims.
Finally, we note that count three of the Blackmons’ complaint asserts a general breaeh-of-implied-warranties claim. We have already discussed a breach-of-the-implied-warranty-of-workmanship claim; however, this count arguably alleges a breach-of-the-implied-warranty-of-merchantability claim as well. This Court explained implied warranties of merchantability as follows in Daimler- *6 Chrysler Corp. v. Morrow, 895 So.2d 861, 864 (Ala.2004):
“The implied warranty of merchantability is found in Ala.Code 1975, § 7-2-814. ‘[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.’ § 7-2-314(1). ‘Goods to be merchantable must be at least such as ... [a]re fit for the ordinary purposes for which such goods are used.’ § 7-3-314(2)(c). ‘[T]he term [merchantability] means that a good sold carries with it an inherent soundness which makes that good suitable for the purpose for which it was designed.’ Agri-Business Supply Co. v. Hodge, 447 So.2d 769, 773 (Ala.Civ.App.1984).”
As we have emphasized, however, “implied warranties [of merchantability] are applicable only to sellers.” Ex parte General Motors Corp., 769 So.2d 903, 910 (Ala.1999) (emphasis added). In this case, the water-supply line that ruptured was included with the faucet purchased by the Blackmons and supplied to Powell; it was not provided or sold by Powell. The linchpin of a breach-of-the-implied-warranty-of-merchantability claim is privity; accordingly, Powell would be unable to pursue any claim against the seller and/or presumed manufacturer of the defective water-supply line. See Wellcraft Marine v. Zarzour, 577 So.2d 414, 419 (Ala.1990) (“There is no right of action on an implied warranty theory against a manufacturer for property damage without privity of contract.” (emphasis omitted)). Thus, a breach-of-the-implied-warranty-of-merchantability claim might properly be asserted by the Blackmons against the Internet seller of the defective water-supply line, but such a claim would be inappropriate between the Blackmons and Powell. Under these facts, Powell cannot be considered to be a seller of the water-supply line that ruptured, and the breach-of-the-implied-warranty-of-merchantability claim asserted against him must fail.
IV.
The Blackmons sued Powell, asserting negligence, wantonness, breach of implied warranties, and breach of contract after a water-supply line Powell had installed in their house ruptured, resulting in water damage throughout the house. Both sides moved for a summary judgment in their favor, and the trial court entered a summary judgment in favor of Powell. That judgment is supported by the evidence in the record and is hereby affirmed.
AFFIRMED.
MOORE, C.J., and PARKER and WISE, JJ., concur.
SHAW, J., concurs in the result.

. The Blackmons state that they no longer have any records from which they might identify the Internet sources from which they purchased the sink and the faucet.