PER CURIAM.
The opinion of September 20, 2018, is withdrawn, and the following is substituted therefor.
Owners Insurance Company (“Owners”) appeals a judgment entered by the Shelby Circuit Court declaring that Owners was obligated to pay an arbitration award entered against Jim Carr Homebuilder, LLC (“JCH”X under the terms of a commercial general-liability (“CGL”) insurance policy Owners had issued JCH. We affirm.
I.
In January 2006, Thomas Johnson and Pat Johnson contracted with JCH, a licensed homebuilder, for the construction of a new house on Lay Lake in Wilson-ville.[1] The Johnsons paid approximately $1.2 million for the design and construction of the house and took possession of the substantially finished house in early February 2007. Within a year, the Johnsons noted several problems with the house related to water leaking through the roof, walls, and floors, resulting in water damage to those and other areas of the house. The Johnsons notified JCH of the problems, and JCH apparently made some efforts to remedy them; however, the John-sons were not satisfied with those efforts, and, on May 13, 2008, the Johnsons sued JCH, alleging breach of contract, fraud, and negligence and wantonness.[2]
The Johnsons’ contract with JCH required JCH to maintain general-liability insurance, and, during the relevant period, JCH held a CGL policy issued by Owners (“the Owners policy”). After receiving notice of the Johnsons’ lawsuit, JCH filed a claim with Owners requesting that it provide a defense and indemnification for the Johnsons’ claims. On July 21, 2008, Owners hired counsel to defend JCH while reserving its right to withdraw the defense if it later determined that the Johnsons’ claims were not covered under the Owners policy. Subsequently, on September 12, 2008, Owners moved the trial court to allow it to intervene in the case for the limited purpose of determining whether there was in fact coverage for the John-sons’ claims.
On December 19, 2008, the trial court issued an order declining to rule on Owners’ motion to intervene at that time but inviting Owners to reapply to intervene at “the appropriate time.” On March 23, 2009, Owners instead filed the instant declaratory-judgment action asking the trial court to determine whether Owners had a duty to defend and indemnify JCH with regard to the Johnsons’ claims. This action was assigned to the same trial judge presiding over the Johnsons’ action against *151 JCH, and JCH and the Johnsons thereafter filed separate answers to Owners’ complaint, asserting their own counterclaims and taking the position that Owners was required to defend and indemnify JCH for the Johnsons’ claims.[3]
During this same time, the Johnsons’ underlying action against JCH proceeded. On July 80, 2008, JCH, through its Owners-provided counsel, moved the trial court to compel arbitration of the Johnsons’ claims pursuant to an arbitration provision in the construction contract entered into by the parties. The trial court granted that motion in the same December 19, 2008, order in which it had declined to grant Owners’ petition to intervene. The Johnsons thereafter moved the trial court to reconsider its order compelling arbitration, and there was thereafter some delay, presumably related to the parties’ reaching an agreement on the mechanics of arbitration. On September 24, 2010, the trial court entered an order noting that the parties had reached an agreement regarding arbitration and staying the case pending completion of the arbitration proceedings. On August 22, 2011, the trial court also stayed the instant case until the underlying case resolving the Johnsons’ claims against JCH was completed.
The Johnsons’ case against JCH proceeded to a final arbitration hearing on March 6, 2012, and, on March 13, 2012, the arbitrator entered an award in favor of the Johnsons in the amount of $600,000 based on the following findings:
“a. That flashing was either not installed or was improperly installed by [JCH’s] subcontractor in certain areas and has subjected other parts of the completed house to leaks, moisture, water intrusion, and damage resulting therefrom;
“b. That the mortar and brick used on the house was not defective, but rather the brick was improperly prepared for installation by [JCH’s] subcontractor, which resulted in excessive absorption of water from the mortar which thereby damaged the completed mortar and requires its replacement;
“c. That the damaged mortar has subjected other parts of the completed house to leaks, moisture, water intrusion, and damage resulting therefrom;
“d. That sufficient weep holes were not installed in the brick or else were covered by mortar by [JCH’s] subcontractor, which has subjected other parts of the completed house to leaks, moisture, water intrusion, and damage resulting therefrom;
“e. That certain windows and doors were not properly installed by [JCH’s] subcontractor and have subjected other parts of the completed house to leaks, moisture, water intrusion, and damage resulting therefrom;
“f. That certain windows and doors either were not caulked or were not properly caulked by [JCH’s] subcontractor, which has subjected other parts of the completed house to leaks, moisture, water intrusion, and damage resulting therefrom;
“g. That the exposed upper porches on the house were not properly installed and waterproofed by [JCH’s] subcontractor, subjecting the completed porch ceilings and areas of the completed dining room to damage from leaks, moisture and water intrusion ...;
*152 “h. That part of the roofing was not properly installed by [JCH’s] subcontractor, resulting in a small hole in the attic through which daylight is visible and in water damage to the completed roof decking;
“i. That the completed window sill on the large ‘great room’ window has suffered visible water damage from water leaks;
“j. That certain areas of the completed hardwood floors have suffered visible water damage from water leaks (to quote [JCH’s] expert, even a ‘blind monkey’ could see this);
“k. That a downstairs bathtub was not properly installed by [JCH’s] subcontractor, resulting in leaks and resulting water damage to the completed wood subfloor below .... ”
The arbitrator also found that the John-sons had suffered “significant mental anguish.” The trial court thereafter entered a judgment in the underlying case consistent with the arbitrator’s award. That judgment was not appealed.
On March 14, 2012, the day after the arbitrator returned its award in the underlying case, the Johnsons moved for a summary judgment in Owners’ declaratory-judgment action, asking the trial court to enter a judgment declaring that the Owners policy did in fact cover the award entered against JCH. JCH thereafter filed its own summary-judgment motion seeking the same relief. On April 6, 2012, Owners filed its response to the summary-judgment motions filed by the Johnsons and JCH and simultaneously moved the trial court to enter a summary judgment in its favor. The trial court heard arguments on the outstanding summary-judgment motions on April 19, 2012, and, on May 25, 2012, granted the summary-judgment motions filed by the Johnsons and JCH, stating, in part:
“It is hereby declared that the entire arbitrator award is covered by the Owners’ policy and that Owners’ duty to indemnify its insured is triggered. This court hereby orders [Owners] to fully indemnify [JCH] for the arbitrator award plus post-judgment interest running from the date of the arbitrator award.”
Some additional claims among these and other parties remained outstanding until March 25, 2013, when the last of those claims was dismissed, and, on March 26, 2013, Owners filed this appeal.
II.
We review Owners’ arguments on appeal pursuant to the following standard:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12.”
*153 Dow v. Alabama Democratic Party, 897 So.2d 1035,1038-39 (Ala.2004).
III.
Owners argues that the trial court erred by holding that Owners was required to indemnify JCH for the award entered against it because, Owners argues, the property damage and bodily injury (i.e., mental anguish) upon which the award was based was not the result of an “occurrence” under the Owners policy and, by its terms, the Owners policy applies only if “[t]he ‘bodily injury’ or ‘property damage’ is caused by an ‘occurrence.” ’ JCH and the Johnsons, however, contend that the damage to the house is property damage resulting from an “occurrence,” and, they argue, the damage is therefore covered by the Owners policy and the judgment of the trial court is correct.
The Owners policy defines an “occurrence” as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” This Court has previously considered the issue whether poor workmanship can lead to an occurrence and has held that, in each case, it depends “on the nature of the damage” that results from the faulty workmanship. Town & Country Prop., L.L.C. v. Amerisure Ins. Co., 111 So.3d 699, 705 (Ala.2011). We explained this principle in further detail in Town & Country by comparing two cases involving claims based on faulty workmanship:
“In [United States Fidelity & Guaranty Co. v.] Warwick [Development Co., 446 So.2d 1021 (Ala.1984) ], the purchasers of a newly built house sued the builder, stating claims of faulty construction and misrepresentation, after taking possession of the house and discovering extensive defects in its construction. The builder then alleged a third-party claim against its insurer after it sought coverage for the purchasers’ claims pursuant to a CGL policy, and its request for coverage was denied. At the conclusion of a trial on all those claims, the trial court awarded damages to the purchasers and held that the insurer was required to indemnify the builder for the purchasers’ claims. On appeal, however, this Court reversed the judgment against the insurer, stating:
“‘The first issue is whether [the insurer’s] policy provided coverage for alleged faulty workmanship and noncomplying materials in the. construction of plaintiffs’ residence when the alleged damage was confined to the residence itself. [The insurer] contends that the policy affords no coverage because (1) no insurable loss occurred within the policy period and (2) damages to the work of the insured attributable to faulty workmanship are expressly excluded from coverage. After a review of the record and the policy involved, we conclude that the trial court incorrectly held that [the insurer] was bound under its policy of insurance to [the builder ]. In our view, there was no “occurrence” within the definition of “occurrence” found in the pertinent policy provisions. The policy clearly states that the company will pay damages for: “A. bodily injury or B. property damage to which this insurance applies caused by an occurrence,” The [insurer’s] policy defines “occurrence” as “an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.” For a contrary holding under circumstances amounting to “an occurrence,” see Moss v. Champion Ins. Co., 442 So.2d 26 (Ala.1983).’
*154 “Warwick, 446 So.2d at 1023. Thus, Warwick held that faulty workmanship itself is not an ‘occurrence.’
“In Moss [v. Champion Insurance Co., 442 So.2d 26 (Ala.1983) ], however, a homeowner sued a contractor she had hired to reroof her house in order ‘to recover for damage she allegedly incurred due to rain which fell into her attic and ceilings because, as she claimed, the roof was uncovered much of the time that the re-roofing job was being performed.’ 442 So.2d at 26. The contractor’s insurer argued that it was not required to provide a defense or to pay any judgment against the contractor because, it argued, the damage was not the result of an occurrence and was therefore not covered under the contractor’s CGL policy. Following a bench trial limited to deciding the insurance-coverage issue, the trial court ruled in the insurer’s favor, holding that the damage to the homeowner’s house was not the result of an occurrence. On appeal, we reversed the trial court’s judgment, stating:
“ ‘That the attempt was made to keep the roof covered as the work progressed was established by the testimony of [the homeowner] herself. That it became insufficient was not attributable to [the contractor], who, for aught that appears from the evidence, did not intend the damage, and who by his personal efforts could not have reasonably foreseen the negligence of his crews in their failure to follow his instructions. [The homeowner’s] complaint against him charged him with negligence (and breach of contract), not conscious acts made with intent to cause damage. His instructions establish his definite steps taken to prevent damage. And finally, after the “repeated exposure to conditions,” the roof leaked. Thus, there was an “occurrence” under the policy, and the [insurer] is obligated by the terms of the policy to defend the [homeowner’s] action and perform other duties contracted for thereunder.’
“Moss, 442 So.2d at 29. Thus, in Moss we held that there had been, an occurrence for CGL policy purposes when the contractor’s poor workmanship resulted in not merely a poorly constructed roof but damage to the plaintiffs attic, interi- or ceilings, and at least some furnishings. Reading Moss and Warwick together, we may conclude that faulty workmanship itself is not an occurrence but that faulty workmanship may lead to an occurrence if it subjects personal property or other parts of the structure to ‘continuous or repeated exposure’ to some other ‘general harmful condition’ (e.g., the rain in Moss) and, as a result of that exposure, personal property or other parts of the structure are damaged.”
111 So.3d at 705-06.
On appeal, Owners highlights the dichotomy between our holdings in United States Fidelity & Guaranty Co. v. Warwick Development Co., 446 So.2d 1021 (Ala.1984), and Moss v. Champion Insurance Co., 442 So.2d 26 (Ala.1983), and emphasizes our statement in Town & Country that “faulty workmanship may lead to an occurrence if it subjects personal property or other parts of the structure to ‘continuous or repeated exposure’ to some other ‘general harmful condition,’ ” 111 So.3d at 706, to argue that faulty workmanship performed as part of a construction or repair project might result in an “occurrence” only to the extent that that workmanship results in property damage to real or personal property that is not part of that construction or repair project. However, in making that argument Own *155 ers asks the term “occurrence” to do too much. The term “occurrence” is defined in the Owners policy simply as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” If some portion of the Owners policy seeks to affect coverage by references to the nature or location of the property damaged, it is not the provision in the policy for coverage of occurrences. The policy simply does not define “occurrence” by reference to such criteria. See, e.g., Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 9 (Tex.2007) (“The CGL policy, however, does not define an ‘occurrence’ in terms of the ownership or character of the property damaged by the act or event. Rather, the policy asks whether the injury was intended or fortuitous, that is, whether the injury was an accident.... [N]o logical basis within the ‘occurrence’ definition allows for distinguishing between damage to the insured’s work and damage to some third-party’s [work or] property _”). See also Travelers Indem. Co. of America v. Moore & Assocs., Inc., 216 S.W.3d 302, 308-09 (Tenn.2007); United States Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 883 (Fla.2007) (“[W]e fail to see how defective work that results in a claim against the contractor because of injury to a third party or damage to a third party’s property is ‘unforeseeable,’ while the same defective work that results in a claim against the contractor because of damage to the completed project is ‘foreseeable.’ This distinction would make the definition of ‘occurrence’ dependent on which property was damaged.); 9A Couch on Insurance § 129:4 (3d ed. 2005) (“[W]hat does constitute an occurrence is an accident caused by or resulting from faulty workmanship, including damage to any property other than the work product and damage to the work product other than the defective workmanship.”). Indeed, to read into the term “occurrence” the limitations urged by Owners would mean that, in a case like this one, where the insured contractor is engaged in constructing an entirely new building, or in a case where the insured contractor is completely renovating a building, coverage for accidents resulting from some generally harmful condition would be illusory. There would be no portion of the project that, if damaged as a result of exposure to such a condition arising out of faulty workmanship of the insured, would be covered under the policy.
To the extent that the passage in Town & Country in which this Court affirmatively stated that damage to personal property and “other parts” of the real property may fall within the ambit of an “occurrence” lends support to Owners’ interpretation of the term “occurrence,” we note that the essential issue in Warwick, upon which Town & Country was based, was merely “whether [the insurer’s] policy provided coverage for alleged faulty workmanship and noncomplying materials.” 446 So.2d at 1023. Reading Warwick and Moss together, we stated in Town & Country that “we may conclude that faulty workmanship itself is not an occurrence.” Ill So.3d at 706. This is the essential holding of Town & Country. In light of the arguments framed in this case, however, we think it prudent to restate that principle in more precise terms — faulty workmanship itself is not “property damage” “caused by” or “arising out of’ an “occurrence.” See also Shane Traylor Cabinetmaker, L.L.C. v. American Res. Ins. Co., 126 So.3d 163, 172 (Ala.2013) (Murdock, J., concurring specially) (“I would state the rule as follows: ‘faulty workmanship itself is not ‘property damage’ ‘caused by’ or ‘arising out of an ‘occurrence.’ That is, the fact that the cost of repairing or replacing faulty workmanship itself is not the intended object of the *156 insurance policy does not necessarily mean that, in an appropriate case, additional damage to a contractor’s work resulting from faulty workmanship might not properly be considered ‘property damage’ ‘caused b^ or ‘arising out of an ‘occurrence.’ ”). In sum, the cost of repairing or replacing faulty workmanship is not the intended object of a CGL policy issued to a builder or contractor. Accordingly, we conclude that the definition of the term “occurrence” does not itself exclude from coverage the property damage alleged in this case.
Our analysis, however, does not end with our discussion of the term “occurrence” because the Owners policy contains other provisions that bear on whether JCH and the Johnsons are entitled to coverage for their losses. The Owners policy, like other standard CGL policies, was intended to insure the builder, that is, JCH, from losses resulting from its negligence while engaged in the process of performing the construction work for which it was hired. That is, once JCH’s “ongoing operations” with regard to the Johnsons’ house came to an end, it was not the intent of the Owners policy to insure JCH against claims for damage to the Johnsons’ house arising from exposure to generally harmful conditions made possible by faulty workmanship previously performed by JCH. This risk is known as the “completed operations hazard” and, absent supplemental coverage purchased by the insured, is not insured against by the standard CGL policy.[4]
In manifestation of this latter fact, standard CGL policies — including the Owners policy — include an express “Your Work” exclusion that specifically addresses the completed-operations hazard. The parties acknowledge the applicability of the “Your Work” exclusion in this case, inasmuch as it is undisputed that JCH’s “operations” on the Johnsons’ house were completed at the time of the alleged occurrences. The “Your Work” exclusion specifically provides:
“This insurance does not apply to:
[[Image here]]
“1. Damage To Your Work
“‘Property damage’ to ‘your work’ arising out of it or any part of it and included in the ‘products-completed operations hazard’ ”[5]
(Emphasis added.) As the emphasized passage makes clear, in order for the “Your Work” exclusion to apply, the damage not only must be to “your work,” but also must be “included” in the “products-completed operations hazard.” We agree with the Johnsons’ explanation of this exclusion in their brief filed with this Court:
“The [Owners] policy’s ‘your work’ exclusion (Exclusion T) excludes coverage for, ‘ “Property damage” to “your work” arising out of it or any part of it and included in the “products-completed operations hazard.” ’ In order for the exclusion to apply, the damage must not only be to ‘your work,’ but it also must *157 be ‘included’ in the ‘products-completed operations hazard.’
“What is ‘included’ in the ‘products-completed operations hazard?’ Generally speaking, products that have left the insured’s possession or work that has been completed are included in the hazard.[13] However, the ‘products-completed operations hazard’ specifically does not include bodily injury or property damage arising out of ‘products or operations for which the classification, shown in the Declarations, states that products-completed operations are included.’
“So, one must look to the Policy’s declarations to see if damage to the insured’s completed work is covered by the Policy or is excluded. If the declarations show coverage for ‘products-completed operations,’ then the ‘your work’ exclusion does not apply. When one looks to the declarations here, one sees that [JCH] does indeed have coverage of up to $2,000,000 for both ‘Bodily Injury Products/Completed Operations’ and ‘Property Damage Products/Completed Operations’ (a total of $4,000,000)....
[[Image here]]
“Simply put, the ‘your work’ exclusion applies if and only if the Policy’s declarations fail to show any coverage for ‘products-completed operations.’ That is not the case here. Clearly, Owners’ insured bargained and paid for up to a total of $4,000,000 in coverage for [its] ‘products-completed operations,’ which nullifies and renders inapplicable the ‘your work’ exclusion here.
[[Image here]]
“According to Owners, the Johnsons’ home and every component of the home is the ‘work’ of [JCH], and therefore the ‘your , work’ exclusion bars coverage under every conceivable set of circumstances — and despite the fact that the Policy’s declarations provide $4,000,000 in coverage for bodily injury and property damage arising out of the insured’s ‘products’ and ‘completed operations.’ If Owners’ interpretation is correct, then Owners is guilty of issuing illusory coverage.
Johnsons’ brief, pp. 47-58. .
In its reply brief, Owners essentially concedes that the Johnsons’ argument on this issue is correct when it states:
“Owners agrees with the statement in the Johnson’s brief that:
“‘The completed operations “hazard” basically means (as a default provision) that an insüred is assuming the risk (“hazard”) related to his completed operations unless the insured purchases coverage for his completed operations ...’ (Johnson[s’] brief at p. 48, [n.] 13) (emphasis supplied).”
Owners’ reply brief, p. 20 n. 4. However, Owners fails to recognize that JCH did in fact purchase a total of $4 million in supplemental insurance coverage for its completed operations. Owners’ argument that the “Your Work” exclusion should nevertheless apply even though this supplemental coverage was purchased is unavailing. Thus, because there is no dispute that *158 JCH’s “operations” on the Johnsons’ house were completed at the time of the alleged occurrences, that coverage applies to the Johnsons’ claims and, pursuant to the terms of the Owners policy, Owners must indemnify JCH for the judgment entered against it.
IV.
Owners initiated an action against JCH and the Johnsons seeking a judgment declaring that it was not obligated to indemnify its insured — JCH—for any judgment entered against JCH in the Johnsons’ separate action alleging that the house JCH had constructed for them was poorly built. After a judgment was entered in favor of the Johnsons in their action against JCH, the trial court in the declaratory-judgment action entered a summary judgment holding that Owners was required to pay the judgment entered against JCH pursuant to the terms of the Owners policy. For the reasons explained above, that judgment is now affirmed.
APPLICATION GRANTED; OPINION OF SEPTEMBER 20, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
STUART, BOLIN, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially.
SHAW, J., concurs in the result in part and dissents in part.

. JCH acted as the general contractor on the project; it employed subcontractors to perform all the actual construction work.

. The Johnsons also named the architectural firm that designed the house as a defendant; however, their claims against that firm are not relevant to this appeal.

. In its answer, JCH also asserted additional counterclaims against new parties, and those parties subsequently brought in additional parties. Those parties and claims, however, are not relevant to this appeal.

. The standard CGL policy referred to in this opinion is the standardized form used in the construction industry and tracks the language of the 1986 revisions by Insurance Services Office, Inc.

. The policy defines "Your work” as meaning:
"(1) Work or operations performed by you or on your behalf; and
"(2) Materials, parts or equipment furnished in connection with such work or operations.”
Unlike some other CGL policies, the Owners policy does not contain a exception as to work performed "on your behalf” for work performed on behalf of the insured by subcontractors. Compare Town & Country, 111 So.3d at 705.

“ 13 '"Completed operations” provisions refer to bodily injury and property damage which occur away from premises owned by or rented to the insured, and after the insured has completed work or relinquished custody of its product.’ 9A Couch on Insurance 3d § 129:28. The completed operations ‘hazard’ basically means (as a default provision) that an insured is assuming the risk (or ‘hazard’) related to his completed operations unless the insured purchases coverage for his completed operations (as [JCH] clearly has done here up to the limit of $4,000,000).”