[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10906
_____

D.C. Docket No. 2:11-cv-00215-MEF-TFM

PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE
COMPANY,

Plaintiff-Counter Defendant-Appellee,

versus

HOWARD SNIDER,
PAM SNIDER,

Defendants-Counter Defendants-
Cross Claimants-
Counter Claimants-Appellants,

JEFF BEALE HOMES,
JEFF BEALE,

Defendants-Counter Claimants-
Cross Defendants.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(April 7, 2015)

Before MARCUS, JILL PRYOR and EBEL,[*] Circuit Judges.

PER CURIAM:

Dr. and Mrs. Howard Snider appeal the district court's declaratory judgment that insurer Pennsylvania National Mutual Casualty Insurance Company ("Penn National") has no duty to indemnify its insured, Jeff Beale, with respect to the Sniders' $700,000 judgment against him. After careful review and oral argument, we affirm.

## I.

The Sniders hired Beale, through his sole proprietorship Jeff Beale Homes (collectively "Beale"), to build their home in Pike Road, Alabama. According to the Sniders, Beale agreed to complete the construction in six to eight months for a total price of $650,000, but the work did not proceed as the parties had planned. After more than a year of work, the project was over budget and incomplete. Shortly thereafter, Beale walked off the job and did not return, forcing the Sniders to hire a new builder to complete the construction. When the Sniders finally moved into the home, they discovered problems with Beale's work.

---

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

The Sniders sued Beale in Alabama state court, asserting breach of contract and breach of implied warranty claims. The Sniders pursued two theories of recovery in the state court action. First, they claimed that Beale breached their oral contract because, although the Sniders paid him the entire amount he was owed, he failed to complete the construction on their home. Second, they claimed that Beale breached their oral contract and an implied warranty under Alabama law because the work he did perform was not done properly. Beale had a commercial general liability policy (the "Policy") through Penn National, and he informed the insurer of the Sniders' claims. Penn National provided Beale with a defense under a reservation of rights.

The Sniders' claims against Beale proceeded to trial in state court. At trial, the Sniders sought damages for the following injuries: (1) mental anguish, (2) emotional distress, (3) the cost of completing the work that Beale left unfinished but for which he was paid, (4) the cost of repairing Beale's faulty work, (5) the cost of repairing property damage caused by water intrusion resulting from Beale's faulty work, and (6) diminution in value of the home. The Sniders sought a total of $1.25 million in damages for the cost of completing the work Beale failed to perform, repairing Beale's faulty work and conditions created by Beale's faulty

3

work, and the diminution in value of their home,[1] as well as unspecified damages for their mental anguish and emotional distress.

Ultimately, the jury awarded the Sniders $700,000.  The jury's verdict form follows:

> ___✓___ We the jury find in favor of the plaintiffs, Pam and Howard Snider, against defendant Jeff Beale and Jeff Beale Homes, on the following claims:
>
> ___✓___ Breach of Contract
>
> ___✓___ Implied Warranty
>
> ___✓___ Emotional Distress
>
> ___✓___ Mental Anguish
>
> OCT 2 2012
>
> and access ___700,000.00___ as Compensatory Damages.

The verdict form reflects that the jury found in the Sniders' favor on both their breach of contract and implied warranty claims,[2] but the form does not indicate what portion of the award was attributable to either claim.  Although the jury indicated that it was awarding damages for mental anguish and emotional distress, the verdict form did not identify the amount of damages awarded for these injuries, for which cause of action they were awarded, or whether the damages award included compensation for any of the Sniders' other injuries.

---

[1] The Sniders sought $450,000 for the cost of completing work and repairs and $800,000 for the diminution in value.

[2] The verdict form also indicates that the jury found in favor of the Sniders on their "claims" for emotional distress and mental anguish.  Emotional distress and mental anguish are not causes of action but rather types of injury.

While the Sniders' lawsuit against Beale was still pending, Penn National filed this action seeking a declaration that it had no duty indemnify Beale under the Policy with respect to the Sniders' claims.  The Sniders brought a counterclaim against Penn National and a crossclaim against Beale to recover the $700,000 judgment.  Penn National and the Sniders each moved for summary judgment.  The district court granted Penn National's motion, ruling that Penn National had no duty to indemnify, and denied the Sniders' motion.  This is the Sniders' appeal.

## II.

We review a district court's grant of summary judgment *de novo,* "viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014).  The interpretation of a provision in an insurance contract "is a question of law, also reviewed *de novo*." *Id.*  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The parties agree that in this diversity action Alabama law governs our interpretation of the Policy.

## III.

The terms of the Policy set forth the scope of Penn National's duty to indemnify Beale.  The Policy provides that Penn National will pay only "those

sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Policy at § I.A.1.a.[3] The Policy further limits coverage to those instances where the "'bodily injury' or 'property damage' is caused by an 'occurrence' . . . ." *Id.* at § I.A.1.b.

Penn National argues that there is no coverage in this case because the Sniders' bodily injuries and property damage did not arise out of an occurrence. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at § V.13. The Supreme Court of Alabama has interpreted "accident" in the insurance context to mean "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could [not] be reasonably anticipated." *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005) (internal quotation marks omitted). Put differently, an accident refers to "something unforeseen, unexpected, or unusual." *Id.* (internal quotation marks omitted). When the insured "at all times act[s] in a deliberate and purposeful manner," his conduct does not constitute an accident or occurrence. *Id.* at 1013 (internal quotation marks omitted).

As the parties seeking coverage under the Policy, the Sniders bear the burden of proving that coverage exists. *See Ala. Hosp. Ass'n Trust v. Mut.*

---

[3] Under an endorsement to the Policy, the definition of bodily injury includes mental anguish. *See* Extended Coverage Endorsement General Liability § II.

*Assurance Soc'y of Ala.*, 538 So. 2d 1209, 1216 (Ala. 1989). Thus, they must show that an accident caused the injuries for which they were awarded damages. At trial, the Sniders advanced two independent theories of liability against Beale: (1) he breached the contract by abandoning the job, and (2) he breached an implied warranty in the contract because he performed faulty work.[4] We now consider whether Beale's conduct under each theory was intentional or accidental to determine whether injuries arising out of the conduct are covered under the Policy.

The Policy plainly does not cover damages arising out of Beale abandoning the job. The Sniders admit that in the state court trial they argued Beale breached the contract by walking off the job and sought damages for this breach. Beale's abandonment of the job was a deliberate, purposeful act, not an accident, and damages arising out of this conduct are not covered under the Policy. *See Shane Traylor Cabinetmaker, L.L.C. v. Am. Res. Ins. Co.*, 126 So. 3d 163, 170 (Ala. 2013) (holding that there was no occurrence when the claim arose not from the contractor's defective work but from, among other things, the contractor abandoning the job).

This alone is sufficient to conclude that there is no coverage under the Policy. We cannot discern from the verdict form the amount of damages the jury

---

[4] Under Alabama law, there is an implied warranty that a contractor will "'use reasonable skill in fulfilling [his] contractual obligations.'" *Blackmon v. Powell*, 132 So. 3d 1, 5 (Ala. 2013) (quoting *Turner v. Westhampton Court, L.L.C.*, 903 So. 2d 82, 93 (Ala. 2004)).

7

awarded the Sniders for their injuries caused by Beale's abandonment of the job, as opposed to injuries caused by Beale's faulty work.[5]  Alabama courts have held that when (1) the injured party in the underlying action pursues two theories of liability, (2) under one of the theories there is no coverage under the policy, and (3) the jury returned a general verdict, then it is "impossible" to establish coverage under the policy.  *Ala. Hosp. Ass'n Trust*, 538 So. 2d at 1216.

The Sniders try to circumvent this problem by arguing that the verdict form shows that the jury awarded them damages only for emotional distress and mental anguish caused by Beale's faulty work.[6]  But the verdict form does not support the Sniders' argument.  First, the verdict form indicates that the jury found in the Sniders' favor on the breach of contract claim, which would include the Sniders' allegations that Beale breached the contract by walking off the job.  Second, the verdict form does not show that all of the damages the jury awarded were for mental anguish or emotional distress.  The verdict form shows, at most, that some

---

[5] The parties could have used a special verdict form to answer such questions, but they did not.  *See Ala. Hosp. Ass'n Trust*, 538 So. 2d at 1216.  During deliberations, the jury asked the trial court whether it was necessary to allocate its award among the claims.  Neither party requested that the court instruct the jury to provide such an itemization.

[6] Under Alabama law, a party can recover an award for mental anguish on a breach of contract claim where "the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering."  *B & M Homes, Inc. v. Hogan*, 376 So. 2d 667, 671 (Ala. 1979) (internal quotation marks omitted).  Alabama law has recognized that "contracts dealing with residences" fall into this special category.  *Id.*

8

unidentified portion of the $700,000 verdict was to compensate the Sniders for their emotional distress and mental anguish.

In their briefs, the Sniders attempt to show that some of their injuries that were the result of Beale's faulty work were caused by accidental, not intentional, conduct. Under Alabama law, when a contractor performs faulty work, generally his conduct is not considered an accident. *See Owners Ins. Co. v. Jim Carr Homebuilder, LLC*, No. 1120764, __ So. 3d __, 2014 WL 1270629, at *6 (Ala. Mar. 28, 2014). When the contractor's faulty work creates a condition that in turn damages property, however, the conduct is considered an accident under Alabama law. *See id.* In the underlying trial, the Sniders sought damages for repairing Beale's faulty work,[7] which the Policy does not cover, and damages for repairing conditions created by Beale's faulty work,[8] which the Policy does cover. Even accepting that the Policy does cover damages arising from conditions created by faulty work, the Sniders still have not carried their burden of proof. They offer no compelling explanation of how they can establish coverage given that they pursued two different theories of liability at trial in the underlying action, the Policy does not cover damages arising out of Beale abandoning the job, and the jury returned a

---

[7] For example, the Sniders sought damages for the cost of replacing a floor that Beale did not install properly.

[8] For example, the Sniders sought damages for the cost of repairing water damage inside the house that resulted from a condition created by Beale's faulty work.

9

general verdict that did not identify the amount of damages being awarded under each theory.

The Sniders alternatively argue that there is coverage under the provision of the Policy covering products-completed operation hazards ("PCOH"). They contend that this provision of the Policy covers claims for bodily injury and property damage even when the injury was not the result of an accident and thus not caused by an occurrence. The Policy's declaration page shows a $2 million "Products-Completed Operations Aggregate Limit." This limit "is the most [Penn National] will pay under Coverage A for damages because of 'bodily injury' and 'property damage' included in the 'products-completed operations hazard.'" Policy at § III.3. The PCOH covers "all 'bodily injury' and 'property damage' . . . arising out of 'your product' or 'your work'" when the insured has completed its work or abandoned the job. *Id.* at § V.16.a. The Supreme Court of Alabama has explained that the purpose of PCOH coverage is to insure bodily injury or property damage that occurs after the insured has completed work. *Jim Carr*, 2014 WL 1270629, at *7-*8.

The PCOH provision does not cover the Sniders' injuries. The Policy explains that the "Products-Completed Operations Aggregate Limit," which provides coverage for bodily injury or property damage included in the PCOH, is "the most [Penn National] will pay under Coverage A." Policy at § III.3.

10

Coverage A, in turn, limits coverage to bodily injury and property damage "caused by an 'occurrence.'"  *Id.* at § I.A.1.b.  The Sniders point out that the Alabama Supreme Court held in *Jim Carr* that there was coverage under the PCOH.  But, in *Jim Carr*, the homeowners' injuries were caused by an occurrence.  *See* 2014 WL 1270629, at \*8.  Nothing in *Jim Carr* supports the Sniders' argument that the PCOH covers injuries not caused by an occurrence.  Because the Sniders cannot show that the jury's entire award was for damages caused by an occurrence, they cannot show that there is coverage under the PCOH.

## IV.

The district court correctly concluded that the Sniders cannot prove coverage under the Policy.[9]  Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**

---

[9] Penn National raises a number of other arguments that there is no coverage, but, having concluded the Sniders' claim is not covered, we need not address them.

11